**STATE of Iowa, Appellee,**

v.

**Anne E. IZZOLENA, Appellant.**

**No. 99–683.**

Supreme Court of Iowa.

April 26, 2000.

Jeffrey T. Mains of Benzoni Law Office, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, John P. Sarcone, County Attorney, and Joe Weeg, Assistant County Attorney, for appellee.

CADY, Justice.

Anne Izzolena appeals from the sentence imposed by the district court following her conviction for involuntary manslaughter in violation of Iowa Code section 707.6A(2)(a) (Supp.1997).[1] She claims the restitution award imposed by the district court under Iowa Code section 910.3B violates due process, double jeopardy, and the prohibition against excessive fines. We affirm.

### I. Background Facts and Proceedings.

Anne Izzolena was driving her Volvo automobile on a rural road in southeast Polk County in the early morning hours of January 3, 1998, after a night of drinking alcoholic beverages. Steve Shank occupied the passenger seat of the vehicle. He was not wearing a seatbelt. The weather was unseasonably warm, and visibility was clear.

Izzolena approached a "T"-intersection while traveling approximately fifty miles per hour. The intersection was marked with a stop sign which directed Izzolena to stop at the intersection. Izzolena proceeded through the intersection without applying the brakes of the vehicle and smashed the front of the vehicle into a tree a short distance off the roadway. The impact forced the engine of the vehicle into the

1. All references to the Iowa Code in this decision are to the 1997 Supplement to the Iowa Code, unless otherwise noted.

passenger compartment and violently threw the occupants forward.

Numerous law enforcement and medical personnel arrived at the scene of the crash. Izzolena was transported to a Des Moines hospital by air ambulance for medical treatment. Shank was extricated from the mangled vehicle with the aid of hydraulic equipment. He died at the scene.

A urine sample obtained at the hospital revealed Izzolena had an alcohol concentration of .184. Shank died with a blood alcohol content of .340.

Izzolena was charged with vehicular homicide under section 707.6A(1) and 707.6A(2)(a). She waived her right to a trial by jury and agreed to a bench trial on stipulated evidence. The district court found her guilty of the crime of unintentionally causing the death of another by operating a motor vehicle in a reckless manner in violation of section 707.6A(2)(a).

Izzolena was sentenced by the district court to an indeterminate term of incarceration not to exceed ten years. The district court also imposed a victim restitution award under section 910.3B of $150,000.

Izzolena filed an appeal. She claims the victim restitution award imposed by the district court violates the Double Jeopardy, Excessive Fines, and Due Process Clauses of the United States and Iowa Constitutions.

## II. Scope of Review.

■ We review constitutional issues de novo. *State v. Hamrick,* 595 N.W.2d 492, 493 (Iowa 1999).

## III. Victim Restitution.

Our legislature has enacted a comprehensive scheme for restitution in all criminal cases which result in a judgment of conviction, except simple misdemeanor traffic convictions. *See generally* Iowa Code ch. 910. This chapter requires the sentencing court to order offenders to make restitution for their criminal activi-ties to the victims of the crime, and to the clerk of court. *See* Iowa Code § 910.2.

Restitution for criminal activities, therefore, is broadly defined by statute to not only mean "payment of pecuniary damages to a victim" but also

> fines, penalties, and surcharges, the contribution of funds to a local anticrime organization which provided assistance to law enforcement in an offender's case, the payment of crime victim compensation program reimbursements, ... court costs including ... court-appointed attorney's fees, or the expense of a public defender, and the performance of a public service by an offender in an amount set by the court when the offender cannot reasonably pay all or part of the court costs including ... court-appointed attorney's fees, or the expense of a public defender.

*Id.* § 910.1(4).

> "Pecuniary damages" is defined by our legislature to mean

> all damages to the extent not paid by an insurer, which a victim could recover against the offender in a civil action arising out of the same facts or event, except punitive damages and damages for pain, suffering, mental anguish, and loss of consortium.

*Id.* § 910.1(3). Pecuniary damages also include "damages for wrongful death and expenses incurred for psychiatric or psychological services or counseling or other counseling for the victim which became necessary as a direct result of the criminal activity." *Id.* A victim is defined by statute to mean "a person who has suffered pecuniary damages as a result of the offender's activities." *Id.* § 910.1(5).

Our legislature recently expanded the scope of restitution to require an offender convicted of a felony resulting in death to pay at least $150,000 in restitution to the victim's estate. *Id.* § 910.3B(1). This award is in addition to victim restitution for pecuniary damage under section 910.1(4). The statute provides:

In all criminal cases in which the offender is convicted of a felony in which the act or acts committed by the offender caused the death of another person, in addition to the amount determined to be payable and ordered to be paid to a victim for pecuniary damages, as defined under section 910.1, and determined under section 910.3, the court shall also order the offender to pay at least one hundred fifty thousand dollars in restitution to the victim's estate. The obligation to pay the additional amount shall not be dischargeable in any proceeding under the federal Bankruptcy Act. Payment of the additional amount shall have the same priority as payment of a victim's pecuniary damages under section 910.2, in the offender's plan for restitution.

*Id.*

 The restitution award under section 910.3B does not impede or supersede the right to pursue additional damages in a civil action arising from the same facts. *Id.* § 910.3B(2). Evidence of the entry of a restitution award and the amount of the award is inadmissible in any subsequent civil action arising from the same set of facts. *Id.* On the other hand, an offender ordered to pay restitution under section 910.3B is precluded from denying the elements of the offense which resulted in the award in any subsequent civil action arising from the same facts or event. *Id.* § 910.3B(3). A restitution award under chapter 910 is also offset against any judgment in favor of a victim in any subsequent civil action arising from the same facts. *Id.* § 910.8 (1997).[2]

Izzolena challenges the restitution award entered by the district court as a part of the sentencing order. She claims the award constitutes an excessive fine in violation to the Eighth Amendment of the United States Constitution and article I, section 17 of the Iowa Constitution. She

---

2. The damages which may be recovered in a wrongful death action are limited by the statute which creates the right to bring the action. 22A Am.Jur.2d *Death* § 215, at 276 (1988). In Iowa, a wrongful death action survives the decedent and is brought by an administrator for the estate. *See* Iowa Code § 611.20. Although brief and general, section 611.20 has provided the courts with the ability to determine the details of wrongful death actions in Iowa. *See* Note, *Wrongful Death Damages in Iowa*, 48 Iowa L.Rev. 666, 667–68 (1963). The ultimate jury award is for one sum, however the jury is generally instructed on the following damages: loss of future earnings (the amount the deceased would have contributed to the estate reduced to present value), *see Soreide v. Vilas & Co.*, 247 Iowa 1139, 1153, 78 N.W.2d 41, 49 (1956); loss of past earnings (if the decedent did not die immediately and was unable to work), *see Miller v. McCoy Truck Lines, Inc.*, 243 Iowa 483, 491, 52 N.W.2d 62, 66 (1952) (personal injury accident with analogous damage award); pain and suffering damages, *see Fitzgerald v. Hale*, 247 Iowa 1194, 1205, 78 N.W.2d 509, 515 (1956) (not a wrongful death action, but an analogous action for pain and suffering after the decedent had died); expenses incurred as a result of the wrongful act, including medical and hospital bills, *see Railsback v. Buesch*, 253 Iowa 1064, 114 N.W.2d 916, 920 (1962), in order to re-

cover these expenses they must be reasonable and necessary, *see Ege v. Born*, 212 Iowa 1138, 1149, 236 N.W. 75, 82 (1931); finally interest on funeral expenses are recoverable as well, *see Brady v. Haw*, 187 Iowa 501, 506, 174 N.W. 331, 332 (1919) (since funeral would have occurred sometime in life, this only accelerated it; only entitled to interest on reasonable burial expense). In addition to the damages the administrator of the estate can recover on behalf of the estate, loss of consortium damages are recoverable by the surviving spouse, individually, as well as by surviving children. *See* Iowa Code § 613.15 (allows an injured person to recover "the value of services and support as spouse or parent, or both"); *see also Audubon–Exira Ready Mix, Inc. v. Illinois Cent. Gulf R.R.*, 335 N.W.2d 148, 152 (Iowa 1983) (action on behalf of surviving children brought by administrator of estate). Parents may also recover loss of consortium damages for the death of minor children. *See* Iowa R. Civ. P. 8 ("A parent, or the parents, may sue for the expense and actual loss of services, companionship and society resulting from injury to or death of a minor child."). Finally, if a person dies as a result of another's willful, wanton, or malicious actions, punitive damages may be recovered as well. *See Berenger v. Frink*, 314 N.W.2d 388, 393 (Iowa 1982); *see also Sebastian v. Wood*, 246 Iowa 94, 100–01, 66 N.W.2d 841, 844–45 (1954).

also alleges it violates the Double Jeopardy Clauses of both constitutions as well as her rights under the Due Process Clause.

## IV. Constitutional Claims.

### A. Excessive Fine.

The Eighth Amendment of the United States Constitution reads: "Excessive bail shall not be required, nor excessive fines be imposed, nor cruel and unusual punishment inflicted." Similarly, article I, section 17 of the Iowa Constitution reads: "Excessive bail shall not be required; excessive fines shall not be imposed, and cruel and unusual punishment shall not be inflicted." The similarity between the two clauses permits us to look to the interpretations by the Unites States Supreme Court for guidance in interpreting our own clause. *See Davenport Water Co. v. Iowa State Commerce Comm'n*, 190 N.W.2d 583, 593 (Iowa 1971).

The Supreme Court has not specifically considered whether victim restitution ordered as a part of a sentence in a criminal case implicates the Excessive Fines Clause. In fact, the Supreme Court has had few opportunities to consider the application of the Excessive Fines Clause. *See Browning–Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265, 109 S.Ct. 2909, 2915, 106 L.Ed.2d 219, 232 (1989).

Nevertheless, a few helpful principles can be distilled from those cases which have addressed the clause. First, the Excessive Fines Clause does not apply to punitive damages in cases between private parties. *See id.* Instead, the clause was intended to limit the steps a government may take against an individual in imposing excessive monetary sanctions. *Id.* at 275, 109 S.Ct. at 2920, 106 L.Ed.2d at 238. Second, the clause is implicated when government has exercised its power to extract payments as punishment for an offense, whether the underlying proceeding is civil or criminal. *Austin v. United*

*States*, 509 U.S. 602, 609–10, 113 S.Ct. 2801, 2805, 125 L.Ed.2d 488, 497 (1993); *see In re H.E.W., Inc.*, 530 N.W.2d 460, 464 (Iowa 1995). Thus, the term "fine" not only embraces those monetary sanctions traditionally imposed in a criminal case, but other sanctions which constitute punishment for an offense. *United States v. Bajakajian*, 524 U.S. 321, 327, 118 S.Ct. 2028, 2033, 141 L.Ed.2d 314, 325 (1998).

Support for these principles is found in the history of the Excessive Fines Clause. The Eighth Amendment was based directly upon article I, section 9 of the Virginia Declaration of Rights, which was derived from the 1689 English Declaration of Rights. *See Browning–Ferris*, 492 U.S. at 266, 109 S.Ct. at 2915, 106 L.Ed.2d at 233. Section 10 of the English Bill of Rights states "Excessive bail ought not be required, nor excessive fines imposed; nor cruel and unusual punishment inflicted." 1 Wm. & Mary 2d Sess. ch. 2, 3 Stat. at Large 440, 441 (1689). It was adopted to curb the English judges under the Stuarts' reigns from imposing heavy fines upon the king's enemies. *See* L. Schwoerer, *The Declaration of Rights, 1689*, at 91 (1981). The framers of our constitution were aware of the abuses that led to the 1689 Bill of Rights. *See* 2 J. Story, *Commentaries on the Constitution of the United States* 624 (T. Cooley 4th ed. 1873) (the Eighth Amendment "was adopted as an admonition to all departments of the national government, to warn them against such violent proceedings as had taken place in England in the arbitrary reigns of some of the Stuarts").

Additionally, at the time of the enactment of the Eighth Amendment, the word "fine" connoted "payment to a sovereign as punishment for some offense." *Bajakajian*, 524 U.S. at 327, 118 S.Ct. at 2033, 141 L.Ed.2d at 325 (quoting *Browning–Ferris*, 492 U.S. at 265, 109 S.Ct. at 2915, 106 L.Ed.2d at 232).[3] "Fines," then, as now,

---

**3.** The accepted meanings of "fine" in 1680's England and 1780's Colonial America were essentially the same. *See Browning–Ferris*, 492 U.S. at 267 n. 10, 109 S.Ct. at 2916 n. 10,

were sanctions imposed in criminal actions.[4] *Browning–Ferris*, 492 U.S. at 265, 109 S.Ct. at 2915, 106 L.Ed.2d at 232.

■ This history and common understanding of the language used to articulate the Excessive Fines Clause reveals that the clear concern of the framers of our constitution was to limit the government's power to punish. *Austin*, 509 U.S. at 609–10, 113 S.Ct. at 2805, 125 L.Ed.2d at 497; *Browning–Ferris*, 492 U.S. at 265, 109 S.Ct. at 2915, 106 L.Ed.2d at 232. The clause served to limit the ability of government to use its prosecutorial powers to impose excessive monetary sanctions. *Browning–Ferris*, 492 U.S. at 275, 109 S.Ct. at 2920, 106 L.Ed.2d at 238. Thus, the test developed to determine whether a particular sanction falls within the Excessive Fines Clause as a "fine" is whether it is, at least in part, punishment. *Austin*, 509 U.S. at 610, 113 S.Ct. at 2805–06, 125 L.Ed.2d at 498; *see Bajakajian*, 524 U.S. at 327, 118 S.Ct. at 2033, 141 L.Ed.2d at 325.[5]

■ We have previously acknowledged that it is not always clear whether restitution constitutes a fine, a civil claim, or some hybrid. *State v. Mayberry*, 415 N.W.2d 644, 646 (Iowa 1987). In fact, we have recognized that the purpose of restitution is two-fold. It not only serves to protect the public by compensating victims for criminal activities, but it also serves to rehabilitate the defendant. *State v. Kluesner*, 389 N.W.2d 370, 372 (Iowa 1986). Restitution goes beyond revenue recovery and is designed to instill responsibility in criminal offenders. *State v. Haines*, 360 N.W.2d 791, 795 (Iowa 1985).

Restitution "forces the defendant to confront, in concrete terms, the harm his actions have caused. Such a penalty will affect the defendant differently than a traditional fine, paid to the State as an abstract and impersonal entity, and often calculated without direct regard to the harm the defendant has caused. Similarly, the direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine."

*Mayberry*, 415 N.W.2d at 646–47 (quoting *Kelly v. Robinson*, 479 U.S. 36, 49 n. 10, 107 S.Ct. 353, 360 n. 10, 93 L.Ed.2d 216, 228 n. 10 (1986) (citing Note, *Victim Restitution in the Criminal Process: A Procedural Analysis*, 97 Harv. L.Rev. 931, 937–41 (1984))).

Moreover, an examination of the specific restitution award under section 910.3B reveals several punitive elements. It is awarded in addition to separate restitution for pecuniary damages. Iowa Code § 910.3B(1). Although pecuniary damages excludes some damages normally recoverable in civil actions, there is no indication our legislature intended restitution under section 910.3B to take the place of the damages excluded from restitution for pecuniary damages. Furthermore, restitution under section 910.3B establishes a minimum threshold amount of $150,000 for

---

106 L.Ed.2d at 233 n. 10 (referencing n. 6 (citing 1 E. Coke Institutes 126b and 2 T. Cunningham, A New and Complete Law–Dictionary (unpaginated) (1771) for respective definitions of "fine")).

4. English case law immediately prior to the enactment of the 1689 Bill of Rights stressed the difference between civil damages and criminal fines. *See Lord Townsend v. Hughes*, 2 Mod. 150, 86 Eng. Rep. 994 (C.P.1677).

5. The State urges us to adopt the more extensive double jeopardy analysis to determine whether a particular sanction constitutes punishment under the Excessive Fines Clause. *See Hudson v. United States*, 522 U.S. 93, 99– 100, 118 S.Ct. 488, 493, 139 L.Ed.2d 450, 459 (1997). We decline to apply the double jeopardy analysis to determine whether a sanction constitutes a punishment under the Excessive Fines Clause. The Excessive Fines Clause has never been understood to be parallel to or even related to the Double Jeopardy Clause. *United States v. Ursery*, 518 U.S. 267, 286, 116 S.Ct. 2135, 2146, 135 L.Ed.2d 549, 567 (1996). The differences in the clauses justify a separate analysis. *See id.* at 287, 116 S.Ct. at 2147, 135 L.Ed.2d at 567 (Supreme Court declined to apply analysis under Excessive Fines Clause to double jeopardy jurisprudence).

all cases, with no required proof of evidence to support damages excluded from the definition of pecuniary damages. Additionally, the restitution imposed under section 910.3B is not dischargeable in bankruptcy. *See Mayberry,* 415 N.W.2d at 646.

It is also important to recognize that fines in criminal cases likely evolved from restitution, when amounts paid to criminal victims as restitution became payable to the king instead. *See id.* at 647 (citing *State v. Hart,* 299 Or. 128, 699 P.2d 1113, 1115 (1985)); *see also* Wolfgang, *Victim Compensation in Crimes of Personal Violence,* 50 Minn. L.Rev. 223, 228 (1965). Thus, restitution and fines share a common history as sanctions in a criminal case.

 Notwithstanding, the State argues that a punishment must be payable to the State to constitute a fine under the Excessive Fines Clause. Restitution under section 910.3B, of course, is payable to the victim.

 In rejecting a claim that the Excessive Fines Clause applied to an award of punitive damages in a civil case between private parties, the Supreme Court stated "The Excessive Fines Clause was intended to limit those fines only directly imposed by, and payable to, the government." *Browning–Ferris,* 492 U.S. at 268, 109 S.Ct. at 2916, 106 L.Ed.2d at 234. Although most monetary sanctions in criminal cases are payable to the government, the greater concern of the Excessive Fines Clause was not the financial gain of the government, but to prevent the government from abusing its power to punish an offender. *Id.* at 266–67, 109 S.Ct. at 2915–16, 106 L.Ed.2d at 232–33; *see Austin,* 509 U.S. at 606–07, 113 S.Ct. at 2804, 125 L.Ed.2d at 495. The idea was to limit government power to punish an individual, not necessarily limit its power to raise revenue. Thus, the focus of the clause is on the impact of the punishment to the individual. *See Browning–Ferris,* 492 U.S. at 275, 109 S.Ct. at 2920, 106 L.Ed.2d at 238. We do not believe the State can make an end run around the Excessive Fines Clause by simply making a punishment payable to a victim.

 Even though a sanction may serve a remedial purpose, it is still subject to the Excessive Fines Clause if it can only be explained as serving in part to punish. *Austin,* 509 U.S. at 621–22, 113 S.Ct. at 2812, 125 L.Ed.2d at 505. Accordingly, we conclude the restitution award under section 910.3B does not only serve a remedial purpose but also serves other purposes normally associated with punishment such as retribution and deterrence. The award is a "fine" within the Eighth Amendment of the United States Constitution and article I, section 17 of the Iowa Constitution.

 Having determined that the Excessive Fines Clause applies to victim restitution awards, the question turns to whether the sanction is excessive. The test is whether the penalty is "grossly disproportional to the gravity of the defendant's offense." *Bajakajian,* 524 U.S. at 337, 118 S.Ct. at 2038, 141 L.Ed.2d at 331.

 Before applying this standard, we must recognize three important limitations. The first limitation is that judgments concerning the appropriate punishment for an offense rests in the first instance with the legislature. *Id.* at 336, 118 S.Ct. at 2037, 141 L.Ed.2d at 330. Thus, we must give substantial deference to our legislators' choice of penalties for criminal offenses. *State v. Ramirez,* 597 N.W.2d 795, 797 (Iowa 1999); *see also State v. Lara,* 580 N.W.2d 783, 785 (Iowa 1998) (legislators are entitled to "wide latitude in prescribing their punishments" (quoting *Simmons v. Iowa* 28 F.3d 1478, 1483 (8th Cir.1994))).[6] The second limitation is that any judicial de-

---

**6.** The Supreme Court has only struck down a fine as excessive under the Eighth Amendment on one occasion in the history of the court. *Bajakajian,* 524 U.S. at 344, 118 S.Ct. at 2041, 141 L.Ed.2d at 335 (Kennedy, J., dissenting).

termination of the gravity of a criminal offense is inherently imprecise. *Id.* This, of course, relates in part to our first limitation and reminds us not to substitute our judgment for that of our legislature. Finally, we are constrained by the absence of guiding authority. The issue we face is one of first impression in this state, and we are unable to find any state in the nation with a similar statute for restitution. Additionally, our United States Supreme Court has never applied the grossly disproportionate test under the Excessive Fines Clause to an award of restitution in a criminal case. *But see Bajakajian,* 524 U.S. at 349, 118 S.Ct. at 2044, 141 L.Ed.2d at 339 (Kennedy, J., dissenting) (forfeitures in criminal cases are in the nature of restitution).

In applying the test of proportionality to the statute in this case, we first recognize that the restitution award does not apply to all crimes resulting in the death of another. Rather, it applies only to felonious acts resulting in death. *See* Iowa Code § 910.3B(1). Although this includes involuntary manslaughter in violation of Iowa Code section 707.5, we have previously found recklessness remains a necessary element of proof in all involuntary manslaughter convictions. *See State v. Conner,* 292 N.W.2d 682, 686 (Iowa 1980). Thus, the restitution award under the statute could not be imposed in a case involving an unintentional or negligent offender. Instead, it is limited to an offender who has demonstrated a willful and wanton disregard for the rights of others in the commission of the crime. *See State v. Ayers,* 478 N.W.2d 606, 608 (Iowa 1991). Crimes committed with willful or wanton disregard for the rights of other persons are extremely serious.

We also recognize that the statute only applies to offenders who committed a crime which caused the death of another human. The seriousness of this harm, in the final analysis, is unmatched in the broad spectrum of crimes. *See Lamphere*

*v. State,* 348 N.W.2d 212, 220 (Iowa 1984) (murder imposes the greatest harm to the victim). The primacy of human life among all other moral values is virtually undisputed by the world's major religions, and the taking of innocent life is considered the greatest universal wrong. *See* Roger C. Crampton and Lori P. Knowles, *Professional Secrecy and Its Exceptions: Spaulding v. Zimmerman Revisited,* 83 Minn. L.Rev. 63, 87 (1998). In the context of the harm caused, the gravity of offenses under section 910.3B is unparalleled.

Finally, in considering the broad discretion of our legislature in determining the penalties for a given crime, we observe there are numerous other crimes to which enormous fines have been attached. These fines apply to crimes, like those covered under section 910.3B, which are most devastating to society. *See* Iowa Code §§ 124.401(1)(a) (1997) (fine up to one million dollars for major quantities of drugs); 124.401(1)(b) (fine of not less than five thousand dollars nor more than one hundred thousand dollars for moderate quantities of drugs); 124.401(1)(c) (fine not less than one thousand dollars nor more than fifty thousand dollars for lesser quantities of drugs); *see also id.* §§ 455B.146A(1) (1997) (fine of not more than ten thousand dollars per day for polluting air quality in Iowa); 455B.191(2) (fine of not more than twenty-five thousand dollars per day for water pollution). The stiff fines for these other crimes helps place the penalty imposed by section 910.3B in context, and reveals the vast parameters of the appropriate punishment for a criminal offense. Thus, in considering the excessiveness of a penalty, we must be alert to apply a constitutional standard which recognizes the different roles between the legislature and the judiciary. Our legislature is free to recognize the seriousness of certain crimes and impose greater punishment, or as under this statute, supplement criminal punishment for serious crimes by imposing mandatory restitution.

Considering the nature of the offense, resulting harm, and the great deference afforded the legislature, we conclude section 910.3B does not on its face violate the Excessive Fines Clause of our state and federal constitutions. The minimum restitution award of $150,000 is high, but not grossly disproportionate to the gravity of the offenses covered under the statute. We make no determination whether any restitution award in excess of $150,000 would violate the Excessive Fines Clause. We also do not decide whether any specific circumstance of this case would render the restitution award as applied to Izzolena violative of the Excessive Fines Clause. Izzolena did not raise the issue in district court or on appeal. Notwithstanding, any case-specific analysis would primarily focus on the amount of the punishment as it relates to the particular circumstances of the offense. *Bajakajian,* 524 U.S. at 334, 118 S.Ct. at 2036, 141 L.Ed.2d at 329 (test of proportionality means the *amount* of the punishment must bear some relationship to the *gravity of the offense* it is designed to punish). The manner in which the amount of a particular fine impacts a particular offender is not the focus of the test. *Klawonn,* 609 N.W.2d 515 (Iowa 2000); *see Alexander v. United States,* 509 U.S. 544, 559, 113 S.Ct. 2766, 2776, 125 L.Ed.2d 441, 456 (1993), *cert. denied,* 522 U.S. 869, 118 S.Ct. 180, 139 L.Ed.2d 120 (1997) (the question is whether the forfeiture was excessive in light of the criminal activity engaged in by the offender); *see also State v. Russell,* 216 N.W.2d 355, 356 (Iowa 1974) (rejected claim of excessive sentence where possibility of imprisonment until age ninety-six); *State v. Van Klaveren,* 208 Iowa 867, 870–71, 226 N.W. 81, 83 (1929) (sentence not excessive because it would undermine defendant's health).

## B. Double Jeopardy.

■ Izzolena alleges the imposition of the $150,000 civil restitution award payable to Shank's estate constitutes multiple punishments for the same offense. Izzolena argues the "restitution" award found in section 910.3B is actually a fine, punitive in nature, and thus additional punishment.

The Fifth Amendment of the United States Constitution, commonly known as the Double Jeopardy Clause, states, "No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. This provision is binding upon the states through the Fourteenth Amendment. *See* U.S. Const. amend. XIV, § 1.

This clause has been interpreted to protect against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *See United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487, 496 (1989); *State v. Wissing,* 528 N.W.2d 561, 565 (Iowa 1995). Article I, section 12 of our constitution includes similar protections, stating, "No person shall after acquittal, be tried for the same offence." *See* Iowa Const. art. I, § 12.

■ Important in the analysis of the Double Jeopardy Clause is that it protects only against the imposition of multiple *criminal* punishments for the same offense. *Hudson,* 522 U.S. at 98, 118 S.Ct. at 493, 139 L.Ed.2d at 458. Although we have determined the award under section 910.3B to be punishment under the Excessive Fines Clause, we need not consider whether it is also punishment under the Double Jeopardy Clause. The Double Jeopardy Clause applies only to *multiple* criminal punishments. Restitution under section 910.3B is a part of the sentencing process. *See State v. Alspach,* 554 N.W.2d 882, 883 (Iowa 1996) (recognizing an indigent defendant's right to counsel at the restitution hearing, as part of the sentencing process); *State v. Wagner,* 484 N.W.2d 212, 217 (Iowa App.1992). While Iowa Code section 910.7 permits a defendant to challenge a restitution award in a subsequent restitution hearing, this does not

change the fact the restitution award is a part of the initial sentence. *See Alspach,* 554 N.W.2d at 883. Thus, the imposition of a restitution award does not implicate multiple punishments for the same offense.

In this case, Izzolena's actions resulted in the death of Shank. Through the enactment of Iowa Code section 910.3B, the legislature has expressly included a mandatory restitution award in the amount of "at least $150,000" payable to the victim's estate which is assessed at sentencing. *See* Iowa Code § 910.3B(1). This is distinguishable from a subsequent fine, after the conviction and sentence have been imposed. *See Department of Revenue v. Kurth Ranch,* 511 U.S. 767, 784, 114 S.Ct. 1937, 1948, 128 L.Ed.2d 767, 781–82 (1994) ("This drug tax . . . is a second punishment . . . [and] must be imposed during the first prosecution or not at all.").

The restitution award was not imposed in a subsequent proceeding, but rather as a function of the original sentencing process. Thus, the Double Jeopardy Clause was not implicated. We find Izzolena's challenge to section 910.3B on double jeopardy grounds has no merit.

### C. Due Process.

Izzolena challenges the restitution award under section 910.3B as violative of her due process rights guaranteed by the United States and Iowa Constitutions. *See* U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 9.[7] Due process protections can be broken down into "procedural" due process and "substantive" due process rights.

■■■■ Izzolena argues section 910.3B provides no opportunity for a hearing on the amount prior to the imposition of the restitution order, which renders it unconstitutional. The State responds by drawing our attention to section 910.7 which provides the defendant the opportunity for a restitution hearing at any time during the pendency of the restitution plan. *See* Iowa Code § 910.7 (1997).

■■■■ Procedural due process requires notice and the opportunity to be heard prior to depriving one of life, liberty, or property. *Knight v. Knight,* 525 N.W.2d 841, 843 (Iowa 1994). However, "due process 'is not a technical conception with fixed content unrelated to time, place and circumstances.' " *Cafeteria & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230, 1236 (1961) (quoting *Joint Anti–Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 162, 71 S.Ct. 624, 643, 95 L.Ed. 817, 849 (1951) (Frankfurter, J., concurring)). Rather, it is "flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972).

In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court identified relevant criteria to look for in determining what process is due prior to depriving one of a property interest. The Court said a procedural due process analysis must balance (1) the private interest affected, (2) the risk of erroneous deprivation and probable value, if any, of additional or substitute procedural safeguards, and (3) the government's interest. *Id.* at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33.

Applying this test to these facts, the private interest here is the property interest in the offender's assets and financial future. Section 910.3B mandates a minimum award of $150,000 to the estate, and the financial ramifications upon the offender are obvious.

---

7. The federal Due Process Clause prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Iowa Due Process Clause states that "no person shall be deprived of life, liberty, or property, without due process of law." Iowa Const. art. I, § 9. We have applied the federal and state due process protections equally in scope, import and purpose. *Exira Community Sch. Dist. v. State,* 512 N.W.2d 787, 792–93 (Iowa 1994).

■■■ However, the risk of erroneous deprivation of this interest through the available procedures is virtually non-existent. In order for this award to be imposed upon an individual, guilt beyond a reasonable doubt must be shown at trial, or a plea of guilty must be accepted for the underlying felonious offense. Additionally, the commission of the offense must have been the proximate cause of the victim's death. And finally, the defendant is afforded the opportunity for a hearing once the court issues the restitution order, at any time during the pendency of the order. *See* Iowa Code § 910.7 (1997).[8] Adding additional or substitute procedures to the process would not provide any additional safeguards to the defendant, as sufficient procedure with respect to the imposition of the award are currently in place.

Finally, the government's interest in the process is viewed in light of the public interest. *Mathews*, 424 U.S. at 347, 96 S.Ct. at 909, 47 L.Ed.2d at 40. This includes the administrative burden and other societal costs associated with requiring an evidentiary hearing as a matter of right in all cases. *Id.* The most obvious burden would be the increased number of hearings. Furthermore, even if a pre-imposition hearing was provided, defendants would also be entitled to a subsequent 910.7 hearing. A pre-imposition hearing would also have little or no effect on the outcome because the award under section 910.3B includes a mandatory minimum level.

■■■ We recognize the broad discretion we afford the legislature in fashioning punishments and penalties for crimes as it sees fit. *State v. Rubino*, 602 N.W.2d 558, 564 (Iowa 1999); *Lara*, 580 N.W.2d at 785. However, due process can still be violated when such "tends to shock the sense of fair play." *Howard v. United States*, 372 F.2d 294, 301 (9th Cir.1967). We do not find the award under section 910.3B "shocks the sense of fair play" such that the defendant is denied any due process rights.

## IV. Conclusion.

We find the minimum restitution award payable to the victim's estate does not constitute an excessive fine under the federal and state constitutions. Furthermore, it is not a multiple punishment in violation of double jeopardy protections. Finally, section 910.3B does not violate notions of due process. We affirm.

**AFFIRMED.**

All justices concur except LAVORATO, J., who dissents and is joined by SNELL and TERNUS, JJ., and CARTER, J., who takes no part.

LAVORATO, Justice (dissenting).

I agree with the majority that the $150,000 minimum restitution under Iowa Code section 910.4 is a "fine" within the Eighth Amendment to the United States Constitution and article I, section 17 of the Iowa Constitution. My agreement, however, stops there. Contrary to the majority, I believe, for reasons that follow, that the fine is excessive and therefore unconstitutional under those constitutional provisions.

---

8. While the district court would not be able to address the amount of the 910.3B award (assuming the minimum $150,000 is ordered) in a hearing under section 910.7, it would be able to adjust the payment plan at any time during the pendency of the order. *State v. Harrison*, 351 N.W.2d 526, 529 (Iowa 1984) (court may review restitution plan or payment plan in 910.7 hearing). The offender's petition for modification must, "on its face," demonstrate a claim of hardship, inadequate income, or a change in income, expenses, or other circumstances sufficient to warrant a hearing. Iowa Code § 910.7 (offender, or another associated with the restitution plan, may petition for modification). However, with respect to the constitutionality of the restitution award, "the focus [of the section 910.7 hearing] is not on whether a defendant has the ability to pay the entire amount of restitution due but on his ability to pay the current installments." *State v. Blank*, 570 N.W.2d 924, 927 (Iowa 1997); *see also State v. Van Hoff*, 415 N.W.2d 647, 649 (Iowa 1987).

Two years ago, for the first time, the United States Supreme Court applied the Excessive Fines Clause of the Eighth Amendment. *See United States v. Bajakajian*, 524 U.S. 321, 327, 118 S.Ct. 2028, 2033, 141 L.Ed.2d 314, 325 (1998). I think *Bajakajian* provides a framework of analysis here. For that reason, I think it is important for me to discuss it in detail.

In *Bajakajian*, the defendant, with his family, attempted to leave the United States without reporting, as required by federal law (31 U.S.C. § 5316(a)(1)(A)), that he was transporting more than $10,000 in currency. *Bajakajian*, 524 U.S. at 324, 118 S.Ct. at 2031, 141 L.Ed.2d at 323. The federal statute in question provides that a person convicted of willfully violating this reporting requirement "shall be fined not more than $250,000, or imprisoned for not more than five years, or both." 31 U.S.C. § 5322(a). In addition, 18 U.S.C. § 982(a)(1) directs the court in imposing sentence on a person convicted of violating the reporting requirement to order the defendant to forfeit "to the United States any property, real or personal, involved in such offense, or any property traceable to such property."

When arrested, Bajakajian had $357,144 in cash in his possession. *Bajakajian*, 524 U.S. at 325, 118 S.Ct. at 2032, 141 L.Ed.2d at 323. He pled guilty to the failure-to-report offense. *Id.* at 325, 118 S.Ct. at 2032, 141 L.Ed.2d at 324. Although section 982(a)(1) directed sentencing courts to impose full forfeiture, the federal district court concluded that forfeiture of the entire $357,144 would be grossly disproportionate to the offense in question and would therefore violate the Excessive Fines Clause. *Id.* at 326, 118 S.Ct. at 2032, 141 L.Ed.2d at 324. The court instead ordered forfeiture of $15,000, in addition to a sentence of three years of probation and a fine of $5000 (the maximum fine under the Sentencing Guidelines). *Id.* The government appealed, seeking full forfeiture, and the Ninth Circuit Court of Appeals affirmed. *Id.*

The Supreme Court granted certiorari. The Court had little trouble concluding the forfeiture provision constituted punishment and was therefore a "fine" within the meaning of the Excessive Fines Clause. *Id.* at 328, 334, 118 S.Ct. at 2033, 2036, 141 L.Ed.2d at 325, 329.

The Court next considered whether the fine was "excessive"—precisely the issue in the case before us. The Court's analysis began with a recognition that "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Id.* at 334, 118 S.Ct. at 2036, 141 L.Ed.2d at 329.

The Court recognized that until now it had never articulated a standard for determining whether a punitive forfeiture is constitutionally excessive. *See id.* The Court adopted the standard of gross disproportionality articulated in its cruel-and-unusual punishment precedents under the Eighth Amendment. *Id.* at 334–36, 118 S.Ct. at 2036–37, 141 L.Ed.2d at 330–31. The Court adopted a gross rather than a strict disproportionality standard for two reasons. First, "judgments about the appropriate punishment for an offense belong in the first instance to the legislature." *Id.* at 336, 118 S.Ct. at 2037, 141 L.Ed.2d at 330. Second, "any judicial determination regarding the gravity of a particular criminal offense will be inherently imprecise." *Id.*

The Court directed district courts and the courts of appeal on how to apply the standard:

> [They] must compare the amount of the forfeiture to the gravity of the defendant's offense. If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional.

*Id.* at 336–37, 118 S.Ct. at 2037–38, 141 L.Ed.2d at 331.

Using this standard, the Court concluded that the forfeiture of Bajakajian's $357,144 would violate the Excessive Fines Clause. *Id.* In support of its conclusion, the court gave the following reasons. First, Bajakajian's crime was solely a reporting offense: He could legally transport the money out of the country if he reported it. *Id.*

Second, Bajakajian's violation was unrelated to any other illegal activities. *Id.* at 338, 118 S.Ct. at 2038, 141 L.Ed.2d at 332. The money was the proceeds of legal activity, and Bajakajian was going to use the money to repay a lawful debt. *Id.* Bajakajian did not fit the profile of persons for whom the statute was intended: money launderers, drug traffickers, and tax evaders. *Id.*

Third, under the Sentencing Guidelines, the maximum sentence that could have been imposed on Bajakajian was six months, while the maximum fine was $5000. *Id.* The Court viewed these penalties as "confirm[ing] a minimal level of culpability." *Id.* at 338–39, 118 S.Ct. at 2038, 141 L.Ed.2d at 332.

Last, the harm that Bajakajian caused was also minimal. *Id.* at 339, 118 S.Ct. at 2039, 141 L.Ed.2d at 332. The only victim was the Government, and the Government was affected in a relatively minor way—it was deprived of information that $357,144 had left the country. *Id.*

The Court's analysis in *Bajakajian* makes clear that determining what is grossly disproportional and therefore excessive *must* be done on a case-by-case basis by the sentencing court. This is in direct opposition to the majority's conclusion here that a $150,000 fine is per se constitutionally acceptable in every case. The majority's per se approach is also in direct conflict with the Supreme Court pronouncement that "no penalty is per se constitutional." *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637, 649 (1983).

Contrary to proportionality principles, the majority's per se approach (1) gives no consideration as to *how* the offense occurred and (2) prevents any consideration of the degree of culpability. Today, this court decides a case that illustrates why the majority's per se approach is not only contrary to proportionality principles but is unfair. *See State v. Rohm,* 609 N.W.2d 504, 512 (Iowa 2000).

In *Rohm,* a mother was convicted of involuntary manslaughter because of her passive conduct in allowing alcohol to remain accessible to minors. Two members of this court believed the evidence was not sufficient to sustain the conviction. *See id.* (Ternus, J., dissenting). Given the circumstances surrounding the offense and the closeness of the decision, one could make a compelling argument that the $150,000 fine assessed against the defendant is excessive. Yet, under the majority's per se approach, she will never have the opportunity to make that argument.

The majority's per se approach also denies a defendant the opportunity to show that the $150,000 fine would deprive the defendant of a livelihood. This is especially important because the fine is nondischargeable in bankruptcy. Although in *Bajakajian* the defendant did not raise the deprivation-of-livelihood argument, the Court hinted that such a consideration is relevant. *See Bajakajian,* 524 U.S. at 340 n.15, 118 S.Ct. at 2039 n.15, 141 L.Ed.2d at 333 n.15. The Court also hinted that a defendant's wealth and income are relevant, as they are on the question of punitive damages in civil cases. *Id.*

Finally, the legislature itself has indicated that a person convicted of involuntary manslaughter may not be so culpable as to merit a $150,000 fine. Apart from the $150,000 restitution award, the legislature has determined that the maximum fine that may be imposed for such a crime is $7500. *See* Iowa Code § 902.9(4). The

disparity between the $150,000 and the $7500 is telling.

I would vacate the restitution order and remand the case for a *meaningful* hearing on the $150,000 restitution order, at which the State and the defendant should be allowed to present evidence and argument as to what the restitution should be. Using the *Bajakajian* standard and analysis, the district court should then determine what amount of restitution is constitutionally appropriate.

SNELL and TERNUS, JJ., join this dissent.