APPEL, Justice
(dissenting).
I respectfully dissent. For the reasons expressed below, I would remand this case to the district court for consideration of the potentially reduced culpability of a juvenile offender before the imposition of punishment through restitution ' under Iowa Code section 910.3B (2013).
I.Applicability of Ragland-Null-Lyle to a Challenge to the Amount of Restitution in a Criminal Case Under the Excessive Fines Clause of Article I, Section 17 of the Iowa Constitution.
A. Introduction. In this case, Daimo-nay Richardson pled guilty to aiding and abetting second-degree murder in connection with the death of Ronald Kunkle. At the time of the murder, Richardson was a troubled fifteen-year-old girl. At the time of the crime, her father had abandoned her, and for many years, her main caregiver was her maternal grandmother. She was sexually assaulted at the age of twelve, had to repeat seventh grade, and began to use drugs and alcohol at an early age. The facts surrounding the crime are outlined in the majority opinion. Richardson’s codefendant, D’Anthony Curd, was four years older than Richardson and encouraged her to skip school and use drugs. She assisted Curd in stabbing Ronald Kunkle to death while under the influence of drugs.
■ At the sentencing hearing, Richardson presented testimony from Dr. Mark Cunningham, a forensic psychologist. He testified to the presence of twenty-one adverse developmental factors that reduced Richardson’s moral culpability for the crime:
l: Age 15 at time of the offense.
2. Trans-generational family dysfunction.
3. Hereditary predisposition to alcohol and drug use.
4. Alcoholism of father.
5. . Abandonment [by] father.
6. Failure of mother to effectively bond' to her.
7. Learning disability.
8. -Emotional and supervisory neglect.
9. Amputation of relationship with psychological parent [grandmother] as a pre-adolescent.
10. Death of psychological parent.
11. Residential transience.
12. Household transitions and instability.
13. Sexual assault.
14. Premature sexualization.
15. Target of peer harassment and bullying.
16. Early teen onset of alcohol and drug abuse.
17. Inadequate mental health interventions.
18. Expulsion from maternal household.
19. Victimization in predatory relationship with codefendant.
20. Domination by the predatory code-fendant in the murder.
21. Heavy substance abuse, including synthetic cannabinoid proximate to offense.
The district court entered an order awarding restitution in the amount of $150,000 to the estate of the victim under Iowa Code section 910.3B.
B. Overview of Legal Issue. In a series of cases, we have held the district court must consider the limited culpability of *628 juvenile offenders in imposing criminal sentences. State v. Lyle, 854 N.W.2d 378, 402 (Iowa 2014); State v. Ragland, 836 N.W.2d 107, 122 (Iowa 2013); State v. Null, 836 N.W.2d 41, 72 (Iowa 2013). These cases generally incorporate and expand upon the teachings of the United States Supreme Court in Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).
In Miller, the United States Supreme Court noted that children were “constitutionally different” from adults for purposes of sentencing. 567 U.S. at -, 132 S.Ct. at 2464, 183 L.Ed.2d at 418. According to the Court, children have a “lack of maturity” and an “underdeveloped sense of responsibility,” leading to “recklessness, im-pulsivity, and heedless risk-taking.” Id. (quoting Roper v. Simmons, 543 U.S. 551, 569, 125 S.Ct. 1183, 1195, 161 L.Ed.2d 1, 21 (2005)). Further, the United States Supreme Court emphasized that children are more vulnerable to “‘negative influences and outside pressures,’ including from their family and peers.” Id. (quoting Roper, 543 U.S. at 569, 125 S.Ct. at 1195, 161 L.Ed.2d at 22). Finally, the Court noted that a child’s character is not as well formed as an adult’s and thus his actions are “less likely to be ‘evidence of irretriev-abl[e] depravflty].’” Id. (quoting Roper, 543 U.S. at 570, 125 S.Ct. at 1195, 161 L.Ed.2d at 22).
Our cases, however, have all arisen in the context of a cruel and unusual punishment challenge to a term of imprisonment. This case raises the interesting question of whether the principles of our cruel and unusual punishment cases involving juvenile offenders apply to a challenge under the excessive fines clause of the Iowa Constitution—article I, section 17—to an award of restitution in a criminal case under Iowa Code section 910.3B.
Iowa has a two-tiered restitution regime that applies in criminal cases. Under Iowa Code section 910.2, an offender is required to make restitution to the victims of crimes. The damages recoverable under Iowa Code section 910.2 include pecuniary damages, which are,
all damages to the extent not paid by an insurer, which a victim could recover against the offender in a civil action arising out of the same facts or event, except punitive damages and damages for pain, suffering, mental anguish, and loss of consortium.
Iowa Code § 910.1(3).
In addition, Iowa Code section 910.3B requires an offender convicted of a felony resulting in death to pay at least $150,000 in restitution to the victim’s estate. The restitution award under this section does not impede or supersede a civil action for damages arising out of the same facts, but is an offset against any judgment in favor of the victim. See id. §§ 910.3B(2), .8.
In State v. Izzolena, we considered a challenge to Iowa Code section 910.3B on the ground that the imposition of a $150,000 restitution award amounted to an unconstitutional excessive fine under the Eighth Amendment of the United States Constitution and article I, section 17 of the Iowa Constitution. 609 N.W.2d 541, 545 (Iowa 2000). In Izzolena, the offender was found guilty of vehicular homicide and the district court imposed a $150,000 restitution award under Iowa Code section 910.3B. Id.
We first considered whether the Excessive Fines Clause was applicable to restitution under Iowa Code section 910.3B. Id. at 547. We canvassed the history of the Excessive Fines Clause, concluding that the framers of the United States Constitution were concerned with limiting the power of the government to punish. Id. at 549. We noted that our cases stated that resti *629 tution was not designed solely to compensate victims, but to rehabilitate and instill responsibility in criminal offenders. Id. at 548; see also State v. Kluesner, 389 N.W.2d 370, 372 (Iowa 1986); State v. Haines, 360 N.W.2d 791, 795 (Iowa 1985). We further noted that Iowa Code section 910.3B revealed punitive purposes. Izzolena, 609 N.W.2d at 548. We noted that under the statute, no proof was required to support damages. Id. at 548-49. We also noted that an award of restitution is not dischargea-ble in bankruptcy, suggesting the punitive nature of the award. Id. at 549.
We thus held that although restitution might serve a remedial purpose, it was still subject to the Excessive Fines Clause because it served in part to punish. Id. We stated that under the Excessive Fines Clause, the test was whether the penalty is “grossly disproportional to the gravity of the defendant’s offense.” Id. (quoting United States v. Bajakajian, 524 U.S. 321, 337, 118 S.Ct. 2028, 2038, 141 L.Ed.2d 314, 331 (1998)).
We concluded, however, that the imposition of a $150,000 restitution award on its face did not violate the Excessive Fines Clause. Id. at 551. We declined to address the question of whether the punishment was constitutional under the facts of the case as the argument was not raised in the district court or on appeal. Id.
Three members of the Izzolena court dissented. The dissenters discussed whether the fine imposed would deprive the defendant of a livelihood. Id. at 555 (Lavo-rato, J., dissenting). They stated that the proper course was to remand the matter to the district eourt for a “meaningful hearing.” Id. at 556 (emphasis omitted).
C. Application to Richardson. There are two potential attacks to the $150,000 fine in this case. The first line of attack is whether the fíne imposed deprives Richardson of a livelihood. This is a consequential attack that concerns itself only with the amount of the award. There is substantial support for this line of attack in the literature and caselaw. Even offenders who commit serious criminal offenses cannot become wage' slaves upon their release or encounter financial burdens so onerous that the offender ends up with an extended term of incarceration arising from inability to pay an excessivé’fine. See Cortney E. Lollar, Punitive Compensation, 51 Tulsa L. Rev. 99, 100 (2015) (decrying situations when criminal defendants end up being incarcerated for a longer period of time than for their, original sentence due to a failure to pay a restitution obligation); Nicholas M. McLean, Livelihood, Ability to Pay, and the Original Meaning of the ExcessivePines Clause, 40 Hastings Const. L.Q. 833, 895-96 (2013) (suggesting excessive-fines test regarding livelihood includes ability to pay in light of earning capacity, financial resources, and burdens fíne places on defendant and his dependents).
To the extent that Richardson seeks to raise a consequential type of claim based on deprivation of the ability to earn a livelihood, I agree that it should be deferred until Richardson is released from prison and until the terms of any restitution order are known. We have recognized that with respect to the obstacles created by imposition of restitution awards, Iowa law places limits on enforcement and collection of the fine and permits the court to structure a plan of restitution to help diminish the collateral consequences of a civil judgment. See State v. Klawonn, 609 N.W.2d 515, 518-19 (Iowa 2000). The best time to measure the impact of any restitution award on the ability of Richardson to earn a livelihood will be measured on her release when a court can examine the burdens of the restitution award and the abili *630 ty of the recently released Richardson to generate income.
There is another type of challenge to the restitution award, however, not one based upon the consequences of an award on the offender’s ability to earn a livelihood, but instead based on the gravity of the offense. See id. at 518. The focus is not on the impact of the amount of the award, but instead on the nature of the underlying crime. Analysis of the gravity of the offense is a fact-specific inquiry. Id.
In my view, inquiry into the gravity of the offense includes consideration of criminal culpability. The relatively recent case of Paroline v. United States, tends to support the view that relative culpability is a factor in determining applicability of the Excessive Fines Clause. See 572 U.S. -, -, 134 S.Ct. 1710, 1727-28, 188 L.Ed.2d 714, 734-35 (2014). Examination of relative culpability clearly allows an offender to offer evidence of reduced criminal culpability under the Ragland-Null-Lyle line of reasoning.
In this case, Richardson received a hearing. The question is, however, whether at the hearing the district court is required to consider evidence that her criminal culpability is reduced because of her age at the time of the crime and other related developmental issues. A reduction in the amount of the fine based on asserted lack of criminal culpability should not be determined at the time of release, when evidence will be hard to come by, but at the time of imposition of the restitution award.
I do not suggest the amount of restitution must be reduced in this case or in any other case, based on the lessened culpability of juvenile offenders. I do think, however, the fact that an offender was a juvenile must be considered in any punishment regime in which culpability is a factor.
Richardson’s expert at the hearing presented twenty-one developmental factors that reduced Richardson’s culpability in this matter. They included her age of fifteen at the time of the offense, the alcoholism and abandonment by her father, a learning disability, failure to bond with her mother, emotional and supervisory neglect, sexual assault, alcohol and drug abuse, heavy substance abuse proximate to the offense, inadequate mental health interventions, peer harassment and bullying, and domination by the predatory codefen-dant in the crime. Based on my review of the record, it is unclear whether the district court understood that it was required to consider the evidence offered by Richardson or whether the district court in fact considered the evidence in making its restitution award. The district court cited the evidence, but the district court did not make specific findings.
Under the circumstances, I think the proper approach is to remand the case for further proceedings before the district court. On remand, the district court should expressly consider the Miller factors outlined in Ragland, Null, and Lyle, make appropriate factual findings, and set the amount of restitution award in this case.
I agree that any challenge to the $150,000 restitution award as excessive and in violation of the excessive fines clause of article I, section 17 of the Iowa Constitution is not ripe.
II. Interpretation of Iowa Code Section 901.5(14).
I also respectfully dissent with respect to the majority’s interpretation of Iowa Code section 901.5(14) (2014). I conclude the statute means what is says, namely, a district court may suspend any part of a sentence, including restitution, in whole or in part. Because the district court did not appear to be aware of that discretion, the *631 case should be remanded to the district court for further consideration.
Iowa Code section 901.5(14) was enacted in part in response to our holdings with respect to mandatory minimum sentences for juvenile offenders.
I begin with the language of Iowa Code section 901.5(14). This Code provision states,
Notwithstanding any provision in section 907.3 or any other provision of law prescribing a mandatory minimum sentence for the offense, if the defendant, other than a child being prosecuted as a youthful offender, is guilty of a public offense other than a class “A” felony, and was under the age of eighteen at the time the offense was committed, the court may suspend the sentence in whole or in part, including any mandatory minimum sentence, or with the consent of the defendant, defer judgment or sentence, and place the defendant on probation upon such conditions as the court may require.
Iowa Code § 901.5(14). As is apparent, the statute provides the court “may suspend the sentence in whole or in part, including any mandatory minimum sentence.”[12] I draw two conclusions from the statutory language.
First, the legislature selected the term “sentence” in the statute. We have repeatedly held the term “sentence” includes restitution in a criminal case. See, e.g., Izzolena, 609 N.W.2d at 551 (“Restitution ... is a part of the sentencing process.”); State v. Alspach, 554 N.W.2d 882, 883 (Iowa 1996) (recognizing that “restitution is a phase of sentencing”); see also 4 Robert R. Rigg, Iowa Practice Series™, Criminal Law § 33:5, at 905 (2016-2017 ed.) (characterizing restitution as “part of the sentence imposed” under our cases). Others authorities have come to the same conclusion. See, e.g., United States v. Simpson, 885 F.2d 36, 38 (3d Cir. 1989) (holding sentences include all consequences of convictions); United States v. Satterfield, 743 F.2d 827, 837-38 (11th Cir. 1984) (stating that Congress intended restitution to be part of the criminal sentence to make the victim whole); 6 Wayne R. La Fave, et al., Criminal Procedure § 26.6(c), at 1068 (4th ed. 2015) (“[Ejvery jurisdiction provides for victim restitution to be included in a criminal sentence.” (Emphasis added.)); Keven Bennardo, Restitution and the Excessive Fines Clause, 77 La. L. Rev. 21, 21 (2016) (“Restitution is an important component of a criminal offender’s sentence.” (Emphasis added.)); Cortney E. Lollar, What is Criminal Restitution?, 100 Iowa L. Rev. 93, 94 (Iowa 2014) (“Restitution imposed as part of a criminal sentence has become a core component of criminal punishment.” (Emphasis added.)). If the legislature intended the statute to apply narrowly, it could have used narrow language. It did not.
As succinctly noted by an appellate court, the term “sentence” is not synonymous with the term “jail.” State v. Josephson, 124 Idaho 286, 858 P.2d 825, 826 (Ct. App. 1993); see also Smarr v. Pa. Bd. of Prob. & Parole, 748 A.2d 799, 801 (Pa. Commw. Ct. 2000) (holding a sentence is not limited to period of incarceration), disapproved of on other grounds by Martin v. Pa. Bd. of Prob. & Parole, 576 Pa. 588, 840 A.2d 299, 308-09 (2003). The terms “sentence” and “judgment” are generally synonymous. See State v. Turbeville, 235 Kan. 993, 686 P.2d 138, 146-47 (1984); accord *632 People v. Adams, 73 Ill.App.2d 1, 220 N.E.2d 17, 18 (1962). A sentence is the judgment formally announced by the court after conviction imposing the punishment to be inflicted. Klouda v. Sixth Judicial Dist. Dep’t of Core. Servs., 642 N.W.2d 255, 261 (Iowa 2002). And, the judgment includes any order of restitution.
Second, under the statute, the district court may suspend any part of the sentence, “including any mandatory minimum sentence.” Iowa Code § 901,5(14). The use of the term “including” demonstrates that the relief was not limited to mandatory minimum sentences. By using the term “including,” the legislature contemplated the statute had a larger reach than simply allowing the district court to suspend a mandatory minimum sentence. The logical conclusion is that it includes any part of the sentence, just as the language of the statute indicates.
I do not think the introductory and closing language of the statute changes the analysis. In the introductory “notwithstanding” phrase, the legislature makes clear that all mandatory mínimums are affected by the statute. The closing language emphasizes the availability of a deferred judgment or probation. These phrases may have been added for emphasis, but they are not inconsistent with the notion that the district court may suspend any part of a sentence.
Based on my examination of the record, I conclude the district court did not realize that, under the statute, it had authority to consider “suspending” the total amount of restitution in its sentencing order based upon the youth of the offender. As a result, remand is required. See State v. Ayers, 590 N.W.2d 25, 32-33 (Iowa 1999).[13]
Wiggins and Hecht, JJ., join this dissent.

. In Lyle, 854 N.W.2d at 404, we held that mandatory minimum sentences for youths could not be imposed without a hearing to consider the factors outlined in Miller, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407. We have no occasion here to consider the extent to which Iowa Code section 901.5(14) complies with Lyle or any other authority.

. The State has a brief heading indicating that Iowa Code section 901.5(14) is not retroactive and does not apply in this case. Aside from the heading, no argument is presented in its brief. We thus have no occasion to consider whether the statute is retroactive or prospective only. See Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGrath, 713 N.W.2d 682, 693 n.3 (Iowa 2006) (considering an issue waived when respondent raised an issue in an introductory heading, but made no argument nor cited authority in support of the issue); accord State v. Vaughan, 859 N.W.2d 492, 503 (Iowa 2015); Iowa Supreme Ct. Att’y Disciplinary Bd. v. Morris, 847 N.W.2d 428, 434 (Iowa 2014).