**STATE of Iowa, Appellee,**

v.

**Charles G. PAXTON, Appellant.**

No. 02–1589.

Supreme Court of Iowa.

Jan. 22, 2004.

Patrick W. O'Bryan, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, John P. Sarcone, County Attorney, and Steve Foritano, Assistant County Attorney, for appellee.

TERNUS, Justice.

The defendant, Charles Paxton, was convicted and sentenced for a theft he committed in his capacity as a stockbroker. In this appeal, he challenges a district court ruling that increased the amount of restitution he was required to pay to the victim of his crime. The appeal was transferred to the court of appeals where the district court's judgment was affirmed. We granted Paxton's application for further review.

After reviewing the record and considering the arguments presented, we are persuaded the district court erred in failing to factor into its calculation of the victim's damages the sum paid to the victim by the defendant's former employer. We vacate the contrary decision of the court of appeals, reverse the judgment of the district court, and remand the case for entry of a restitution order consistent with our decision.

## I. *Background Facts and Proceedings.*

The record supports the following rendition of facts. In May 1995, Charles Paxton was a stockbroker for Everen Securities, Inc. At that time, Robert and Marilyn Clauss loaned Paxton $300,000 for the purchase of convertible notes in Diacrin, Inc. Pursuant to the parties' written agreement, Robert Clauss was to receive fifteen percent of the profits from any stock ultimately obtained from the convertible notes.

Notwithstanding his agreement with the Clausses, Paxton used only $270,000 to purchase the notes and spent the remainder of the loan proceeds on personal expenses. Later, he converted the notes into 108,000 shares of Diacrin stock. On June 2, 1997, Paxton sold the shares for $1,147,500. The sale resulted in profits of $877,500 (the sale proceeds minus the purchase cost of $270,000). Paxton should have paid Clauss fifteen percent of these profits—$131,625—plus the loan amount of $300,000. Instead, Paxton paid Clauss only $134,000 and converted the balance of the sale proceeds to his personal use.

The State charged Paxton with first-degree theft as a result of these events. Paxton pled guilty to third-degree theft in violation of Iowa Code sections 714.1(1) and 714.2(3) (1999). The district court gave Paxton a suspended, indeterminate two-year prison term and placed him on probation. The court further fixed Paxton's required victim restitution at $165,000 (the loan amount minus the sum Paxton had already repaid Clauss).

Paxton subsequently applied for a modification of the restitution order. He sought a credit for $28,927 Clauss received from Paxton's bankruptcy estate. Paxton also requested credit for an arbitration award in the amount of $40,000 paid by Everen Securities to Clauss. The State sought to increase the restitution amount by the share of profits that Clauss was entitled to receive from the sale of the stock.

After a hearing, the district court determined Clauss was entitled to restitution for his agreed share of the profits on the stock sale ($131,625). The court also decided that the restitution award should be reduced by the amount Clauss received from the defendant's bankruptcy estate. The court refused, however, to deduct the arbitration payment from the amount of

restitution owed by Paxton. These calculations increased the defendant's required restitution to $267,798.

Paxton appealed, asserting the record did not contain substantial evidence in support of the award. More specifically, Paxton claimed the evidence was insufficient to show the terms of his agreement with Clauss, as well as the exact extent of the profits realized in the transaction. The defendant also contended his obligation to Clauss was extinguished in the bankruptcy proceeding and, consequently, no amount of restitution was appropriate. In addition, Paxton asserted error in the district court's refusal to reduce the restitution order by the amount of the arbitration payment from Paxton's former employer. The defendant's final complaint rested on his assertion that his agreement with the Clausses was an illegal contract, and consequently Clauss would not have been able to recover any damages in a civil action.

The court of appeals affirmed the district court's restitution order. The appellate court concluded the parties' written agreement provided an adequate basis for the trial court's calculation of Clauss's damages, which properly included the profits expected by Clauss as established by the agreement. The court of appeals rejected Paxton's claim the restitution amount should be limited to the amount paid by the bankruptcy estate. The court further concluded Paxton should not receive a credit for the arbitration award Clauss received from Paxton's former employer. Finally, the court determined that Paxton failed to preserve his claim that his agreement with the Clausses was illegal because Paxton failed to raise the issue in district court.

We granted Paxton's application for further review. Because we agree with the court of appeals' resolution of these issues with one exception, we limit our discussion to that issue: credit for the arbitration payment.

## II. Scope of Review.

■ We review the trial court's restitution order for correction of errors of law. *See State v. Bonstetter,* 637 N.W.2d 161, 165 (Iowa 2001). We are bound by the district court's findings of fact so long as they are supported by substantial evidence. *See id.*

## III. Determination of Amount of Victim Restitution.

Iowa criminal defendants who plead guilty or who are found guilty must make "restitution . . . to the victims of the offender's criminal activities." *See* Iowa Code § 910.2. Restitution includes the "payment of pecuniary damages to a victim." *Id.* § 910.1(4). Pecuniary damages are defined as "all damages to the extent not paid by an insurer, *which a victim could recover against an offender in a civil action* arising out of the same facts or event, except punitive damages and damages for pain, suffering, mental anguish, and loss of consortium." *Id.* § 910.1(3) (emphasis added).

■ The words used by the legislature to define "pecuniary damages" clearly indicate a legislative intent that restitution to a victim depend on what the victim could obtain in a civil action against the defendant. *See generally State v. Pickett,* 671 N.W.2d 866, 870 (Iowa 2003) (" 'When we interpret a statute, we attempt to give effect to the general assembly's intent in enacting the law. Generally, this intent is gleaned from the language of the statute.' " (Citation omitted.)); *Teggatz v. Ringleb,* 610 N.W.2d 527, 530 (Iowa 2000) ("[I]f the terms of the statute are explicit, the plain meaning of the language will be applied."). Therefore, in determining whether a defendant's restitution obli-

gation is reduced by payments from third parties vicariously liable for the defendant's conduct, we start with an examination of the victim's potential civil recovery.

■ The question here is whether any judgment obtained by Clauss against Paxton would be subject to a dollar-for-dollar credit for payments made by Paxton's employer. This type of credit, known as the pro tanto credit rule, "is designed to prevent a double recovery by the injured party." *Jamieson v. Harrison,* 532 N.W.2d 779, 781–82 (Iowa 1995). In examining the matter before us, we think a pro tanto credit would be required under any theory of recovery—negligence, fraud, or breach of contract—available to Clauss in an action against Paxton.

■ We have held "that the pro tanto rule remains viable in cases not affected by the enactment of chapter 668," Iowa's comparative fault statute. *Tratchel v. Essex Group, Inc.,* 452 N.W.2d 171, 181 (Iowa 1990); *see also Thomas v. Solberg,* 442 N.W.2d 73, 76–77 (Iowa 1989) (stating chapter 668 adopted the proportionate credit rule). Fraud actions are not included within the scope of chapter 668. *See Tratchel,* 452 N.W.2d at 181. Nor are breach-of-contract actions encompassed in that statute. *See Vasquez v. LeMars Mut. Ins. Co.,* 477 N.W.2d 404, 409–10 (Iowa 1991). Therefore, the pro tanto credit rule would apply to any recovery by Clauss under one of these theories.

■ Even if Clauss could recover under a negligence theory subject to chapter 668, we do not think the proportionate credit rule of that statute would apply. Because Everen Securities was vicariously liable for Paxton's conduct (rather than independently liable to Clauss), Everen Securities and Paxton would be treated as a single party under the comparative fault statute. *See* Iowa Code § 668.3(2)(*b*) (instructing court to treat defendants, where appropriate, "as a single party" for purposes of allocating fault); *Biddle v. Sartori Mem'l Hosp.,* 518 N.W.2d 795, 799 (Iowa 1994) (stating doctor and hospital—vicariously liable for doctor's negligence—"were properly 'treated as a single party'" for purposes of release obtained by doctor (citing Iowa Code section 668.3(2)(*b*))). Consequently, Everen Securities and Paxton would be liable for the same act of fault and accordingly would be jointly allocated the same portion of Clauss' damages (in this case one hundred percent since there are no other parties at fault). Thus, as between Everen Securities and Paxton, there is no separate fault that could be subject to or give rise to a *proportionate* credit under chapter 668. It follows, then, that the pro tanto credit rule would apply and any payment made by Everen Securities or Paxton would serve to reduce their joint liability to Clauss to the extent of the payment made.[1] *See Jamieson,* 532 N.W.2d at 782 (pro tanto credit rule continues to govern where proportionate credit rule of comparative fault statute does not apply).

Because the pro tanto rule would apply in any civil suit brought by Clauss against Paxton, Clauss's recovery would be reduced by the $40,000 already paid by Paxton's employer as partial satisfaction of Everen Securities and Paxton's joint liability to Clauss. Since the victim's pecuniary

---

1. There is no indication in the record that the payment by Everen Securities was in exchange for a release of liability so as to raise the possibility that Paxton's liability was totally extinguished by the arbitration award. *Cf. Biddle,* 518 N.W.2d at 799 (holding release of tortfeasor physician served to extinguish any further claim against hospital for its vicarious liability since the release satisfied the fault attributable to the tortfeasor and, vicariously, to the hospital).

damages under section 910.1(3) are measured by the amount of the victim's potential civil recovery and because any civil judgment obtained by Clauss would be subject to a credit for the amount already paid by Paxton's employer, we conclude Paxton's obligation for victim restitution under chapter 910 would also be subject to the same credit.

The State has argued that recognition of such a credit is inappropriate because it would frustrate the intent of restitution, which is "to instill responsibility in offenders." *State v. Izzolena,* 609 N.W.2d 541, 548 (Iowa 2000). The State also claims Paxton should not be entitled to a credit because he was not a party to the arbitration between Clauss and Everen Securities. The State's final argument against a credit, apparently premised on the assumption that the arbitration award was paid by an insurer, is that it "would be tantamount to insuring against criminal conduct," which "is against . . . public policy."

We find these arguments unpersuasive in view of the clear language of the statutory definition of "pecuniary damages," a definition that expressly ties victim restitution to the amount recoverable in a civil suit. The legislature presumably considered the policy implications of the definition it adopted and reached the legitimate conclusion that the victim of criminal conduct should be entitled to recover no more through the criminal process than the victim could have obtained in a civil action. *Cf. Teggatz,* 610 N.W.2d at 530 (giving effect to section 910.8 as written, even though the statute may appear to conflict with traditional application of issue preclusion, because that was the decision made by the legislature when it enacted that provision). In fact, rather than maximizing the amount of victim restitution under chapter 910, the legislature actually did just the opposite by eliminating punitive damages and damages for pain, suffering, mental anguish, and loss of consortium from the scope of "pecuniary damages" payable by the defendant as restitution. *See* Iowa Code § 910.1(3).

We also observe that our interpretation of the statute does not thwart the rehabilitative goals of restitution. Reduction of Paxton's restitution obligation to Clauss does not eliminate Paxton's potential liability to his former employer for reimbursement of his employer's payment to Clauss. *See Biddle,* 518 N.W.2d at 799 (noting comparative fault act did not disturb "well settled rule that a principal found vicariously liable for the negligent acts of an agent retains a right of full indemnity against the actual tortfeasor"). Nor does the restitution order preclude Clauss from relitigating the amount of his damages in a civil suit against Paxton. *Teggatz,* 610 N.W.2d at 530–31. Thus, the legislative scheme permits the criminal court to preclude a double recovery by the victim, but does not abolish the offender's ultimate accountability for the damages caused by his criminal conduct.

We also find no inconsistency in our interpretation of the statute today and our decision in *Bonstetter* where we disallowed any offset against restitution for monetary claims held by the defendant against the victim. In *Bonstetter,* the defendant, convicted of converting monies from his employer, sought an offset against the restitution he was ordered to make to his former employer for amounts he claimed his employer owed him for accrued vacation and retirement benefits. 637 N.W.2d at 164. We held the trial court had correctly denied the defendant the claimed offset because the only reduction of the victim's damages mentioned in the statute was for amounts paid by an insurer. *Id.* at 167. Our decision was

based on an interpretation of a portion of the statutory definition of "pecuniary damages," specifically the language " 'all damages to the extent not paid by an insurer.' " *Id.* (quoting Iowa Code section 910.1(3)).

█ In contrast, here, our focus is on that part of the definition following the language interpreted in *Bonstetter*, namely, "which a victim could recover against the offender in a civil action arising out of the same facts or event." Iowa Code § 910.1(3). As we have already discussed, any damages recoverable in a civil action would be subject to reduction to the extent of payments made to the victim for the same damages. Thus, the prohibition against double recovery, and the consequent credit for payments already received by the victim, is inherent in the statutory measure of recovery. The same cannot be said for the offset sought in *Bonstetter*, which was based on claims unrelated to the calculation of the victim's damages.

### IV. *Application to Present Case.*

Although the State argued on appeal that payments such as that made by Paxton's employer should never reduce an offender's restitution obligation, the district court's refusal to credit Paxton with the arbitration payment was factually based. In its ruling, the district court acknowledged that this payment may have been based "on some sort of vicarious responsibility" of Everen Securities for the defendant's conduct, but observed "there may be other reasons not disclosed to the court for this payment unassociated with the defendant." The problem with the court's ruling is that Clauss's testimony at the restitution hearing, along with the defendant's deposition testimony, shows the award *was* based on the defendant's conduct, and no contrary evidence was presented in the record. Thus, the trial court's decision to deny the defendant a credit for his employer's payment rested on speculation and not on factual findings that were supported by substantial evidence.

### V. *Summary and Disposition.*

We conclude the uncontroverted evidence in the record established that the arbitration payment made by Everen Securities was based on its vicarious liability for Paxton's theft from Clauss. Because that payment would serve as a credit against any civil recovery by Clauss against Paxton, the same reduction is warranted in calculating Clauss's pecuniary damages under chapter 910. The district court erred in failing to make this deduction in its restitution order.

Accordingly, we vacate the court of appeals' decision and reverse the district court's restitution order. The case is remanded to the district court for entry of an order requiring Paxton to pay victim restitution in the amount of $227,798, a reduction of $40,000 from the district court's final order of restitution.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**