**STATE of Iowa, Appellant,**

v.

**Ryan Lynn KLAWONN, Appellee.**

No. 03–1118.

Supreme Court of Iowa.

Oct. 22, 2004.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, John P. Sarcone, County Attorney, and Jeff Noble, Assistant County Attorney, for appellant.

Maggi Moss and Matthew Oetker of Parrish Kruidenier, Moss, Dunn, Boles,

Gribble & Cook, L.L.P., Des Moines, for appellee.

WIGGINS, Justice.

Ryan Lynn Klawonn filed a petition asking the district court to reduce a previous order of restitution entered under chapter 910 of the Iowa Code by the amount his insurance carrier paid in a settlement of a civil action arising out of the same facts or event as the criminal proceeding. The district court reduced the order of restitution by the subsequent settlement amount and modified the order of restitution. Because we hold a settlement obtained in a civil action arising out of the same facts or event as a previous criminal proceeding reduces a prior order of restitution, we affirm the judgment of the district court.

## I. Background Facts and Procedure.

On November 22, 1997, Klawonn sped through an intersection and collided with a vehicle driven by Nathaniel Boykin. Boykin died as a result of the injuries he received in the collision. The State charged Klawonn with vehicular homicide, but Klawonn later pled guilty to involuntary manslaughter in violation of Iowa Code section 707.5(1) (1997). On March 19, 1999, the district court gave Klawonn a suspended sentence and placed him on probation for two years. Additionally, Klawonn was ordered to pay $4,702.23 in pecuniary damages to the victim's widow, Velma Boykin (Boykin), $5,000 to the Iowa Crime Victim Compensation Program, and $150,000 to the Nathaniel Boykin Estate (Estate) in restitution as required by Iowa Code section 910.3B (1999).

Klawonn appealed the restitution order, challenging the constitutionality of the $150,000 order of restitution. *State v. Klawonn*, 609 N.W.2d 515 (Iowa 2000). We affirmed the restitution award, holding it did not constitute an excessive fine, violate notions of double jeopardy, or violate procedural or substantive due process rights. *Id.* at 522.

On March 3, 1999, before the district court entered its restitution order, Boykin filed a civil wrongful death action against Klawonn. She filed the action individually and as personal representative of the Estate. Count I of Boykin's petition alleged a claim of negligence against Klawonn and sought damages for pain and suffering, physical and mental injuries, loss to the Estate due to premature death, actual expenses, and the present value of the amount the Estate would have accumulated. Count II of the petition prayed for damages sustained by Boykin because of her loss of spousal consortium.

Klawonn's auto insurance carrier defended the civil action. The parties entered into a settlement. Boykin signed a general release stating she received $275,000 from Klawonn and in return, Boykin, individually, and as personal representative of the Estate would "release and forever discharge [Klawonn] from any and all causes of action and claims for or by reason of any damage, loss, suffering or injury to persons and property ... sustained by anyone in consequence of this incident and injury, including claims for loss of consortium." On August 9, 2000, Boykin dismissed the civil action against Klawonn with prejudice.

Klawonn filed a motion to modify the restitution order entered in the criminal action to reflect the payments received by Boykin and the Estate in the civil action. The district court reduced the restitution order by the amount received by Boykin and the Estate in the civil action. The State applied for discretionary review of the district court's ruling, which we granted.

## II. Issue.

We must determine whether a settlement made in a civil action arising out of the same facts or event as the prior criminal proceeding reduces the amount due to the victim under the restitution order, which imposed a $150,000 payment of restitution under Iowa Code section 910.3B(1).

## III. Scope of Review.

Our review of a restitution order is for correction of errors at law. *State v. Watts*, 587 N.W.2d 750, 751 (Iowa 1998). When reviewing a restitution order, "we determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law." *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001).

## IV. Analysis.

The $150,000, which the district court ordered Klawonn to pay to the Estate, is restitution under Iowa Code section 910.3B(1), which provides in relevant part:

> In all criminal cases in which the offender is convicted of a felony in which the act or acts committed by the offender caused the death of another person, in addition to the amount determined to be payable and ordered to be paid to a victim for pecuniary damages, as defined under section 910.1, and determined under section 910.3, the court shall also order the offender to pay at least *one hundred fifty thousand dollars in restitution* to the victim's estate.

Iowa Code § 910.3B(1) (emphasis added). We have previously held the $150,000 restitution awarded under this section is a fine. *State v. Izzolena*, 609 N.W.2d 541, 549 (Iowa 2000); *Klawonn*, 609 N.W.2d at 518–19. Section 910.3B(1) is clear and unambiguous that the $150,000 awarded as restitution is in addition to pecuniary damages defined under section 910.1 and determined under section 910.3. Iowa Code § 910.3B(1). Therefore, the common-law rules prohibiting double recovery of damages do not apply to the $150,000 restitution awarded under section 910.3B(1). *Cf. State v. Paxton*, 674 N.W.2d 106, 108–11 (Iowa 2004) (holding pecuniary damages under section 910.1(3) are limited to those damages that a victim could recover against the offender in a civil action; thus, the common-law rules of set off apply to prevent a double recovery).

Iowa Code chapter 910 provides "any restitution payment by the offender to a victim shall be set off against any judgment in favor of the victim in a civil action arising out of the same facts or event." Iowa Code § 910.8. While this section credits any restitution payment against a judgment a victim receives in a subsequent civil action arising out of the same facts or event, this provision does not address whether a settlement of a civil action arising out of the same facts or event must be credited against the prior order of restitution.

Because Iowa Code chapter 910 does not expressly address the situation before us, we must attempt to determine the result intended by the legislature. If the statutes are not clear, we look to other indicia of legislative intent, including the subject matter of the act, the object to be accomplished, and the purpose of the act. *Case v. Olson*, 234 Iowa 869, 872–73, 14 N.W.2d 717, 719 (1944).

Restitution has a two-fold purpose: (1) to protect the public by compensating victims for criminal activities; and (2) to rehabilitate the offender by instilling responsibility in the offender. *Izzolena*, 609 N.W.2d at 548. Additionally, a restitution award contains several punitive elements.

*Id.* Typically, a victim does not file a civil action against an offender because an offender usually does not have the means or insurance coverage to satisfy a civil judgment. The $150,000 in restitution awarded under section 910.3B is considered punishment to the offender and compensation to the victim's family. *Klawonn,* 609 N.W.2d at 520.

In those cases where the offender has the means to pay the $150,000 of restitution ordered by the court under section 910.3B prior to the entry of a civil judgment arising out of the same facts or event as the criminal prosecution, a subsequently obtained civil judgment will be reduced by the $150,000 restitution payment made by the offender. Iowa Code § 910.8. In other words, in situations where the offender has the means to pay his or her restitution, the legislature has limited the victim's total recovery to the damages awarded in the civil action. It appears the purpose of this legislative scheme is to coordinate restitution with civil damage awards in order to prevent a victim from receiving a windfall of $150,000 awarded to the victim under section 910.3B(1) in addition to the collectible damages recoverable by a judgment entered in the civil action.

■ In the present case, the release agreement by its terms released and forever discharged Klawonn "from any and all causes of action and claims for or by reason of any damage, loss, suffering or injury to persons and property ... sustained by anyone in consequence of this incident and injury, including claims for loss of consortium." Boykin entered into the release agreement individually and as personal representative of the Estate. We interpret settlement agreements according to the intent of the parties as determined by the terms of the release. *Waits v. United Fire & Cas. Co.,* 572 N.W.2d 565, 572 (Iowa 1997). Although Boykin could

have preserved the Estate's right to receive the payments ordered by the court in its order of restitution as additional consideration for the release, she failed to do so. Under the plain terms of the release, Boykin accepted the $275,000 as full satisfaction of any damages she or the Estate may be entitled to from Klawonn as a result of her husband's death. Her release of the claims against Klawonn has no effect on the criminal order of restitution. *Abeyta v. State,* 42 P.3d 1009, 1013 (Wyo.2002) (holding "[w]here restitution is imposed as part of a criminal sentence, it is not a debt between the defendant and the victim, and agreements between those parties have no effect on a sentencing courts order of restitution except to the extent that the statute requires offset"). The settlement, however, was equivalent to a final judgment in the civil action because it covered all damages she and the Estate could have recovered in the civil action without reserving any claims or damages.

Under these facts, if the settlement is not used to reduce the order of restitution, Boykin will collect the compensable damages she would have been entitled to if her civil action was reduced to judgment, plus the $150,000 Klawonn was ordered to pay as additional restitution under section 910.3B(1). Under section 910.8, if Klawonn did not settle the lawsuit but allowed it to proceed to final judgment and paid the $150,000 in restitution he was ordered to pay under section 910.3B(1) prior to the civil action being reduced to judgment, Boykin and the Estate would only be allowed to recover the damages awarded in the civil action. Iowa Code § 910.8. We do not think the timing of Klawonn's restitution payments should entitle Boykin and the Estate to a $150,000 windfall. This result is consistent with the legislative intent to coordinate criminal restitution un-

der section 910.3B(1) with Iowa's civil damage scheme. *See* Iowa Code § 910.8.

Having determined the settlement in this case is equivalent to a final judgment, it would be an absurd result to allow an offender who has paid his or her court-ordered restitution to offset the restitution against a subsequent civil judgment, while prohibiting a person from setting off the final settlement of a civil action arising out of the same facts or event as the prior criminal proceeding against amounts ordered as restitution. We should not interpret our statutes to provide absurd results, and construing chapter 910 in a way that allows set offs based on the timing of the payments and the method of recovery creates an absurd result. *See State v. Booth,* 670 N.W.2d 209, 211 (Iowa 2003). Therefore, the district court was correct when it permitted the settlement made by Klawonn's insurance company on his behalf to be set off against $150,000 order of restitution.

## V. Disposition.

Because the payments received by Boykin and the Estate from the settlement of the civil action exceeded the amount due under the restitution order entered by the district court, the restitution order as it relates to Boykin and the Estate has been paid in full, and the judgment of the district court is affirmed.

**AFFIRMED.**

All justices concur except LAVORATO, C.J., and LARSON, J., who take no part and CADY, J., who dissents.

CADY, Justice (dissenting).

I respectfully dissent. Although the set-off rule of section 910.8 is clearly limited by its language to judgments, the majority ultimately concludes it is required to interpret the statute to include settlements to prevent the statute from achieving an absurd result. I would limit the statute to its plain language, as courts are required to do, because this plain language does not in any way create an absurd result.

I agree with the majority that the purpose of the statute is to prevent a financial windfall for the plaintiff and, conversely, avoid the imposition of an additional financial hardship on the defendant. Yet, the statute does not need to be read to include settlements to accomplish this purpose. The reason is that, absent a statute or court order, a restitution order entered in a criminal case is unaffected by any judgment entered in a civil case arising out of the same facts and circumstances. The order and judgment are both enforceable court orders. Thus, to prevent the windfall that would otherwise result, our legislature provided for a setoff. However, if a civil action is concluded by settlement instead of a judgment, the parties to the settlement can include the necessary provisions in the settlement agreement to prevent any windfall. For example, the settlement agreement could include a provision that the first $150,000 of the settlement proceeds would be paid to the plaintiff through the clerk of court or other person designated under the restitution order so the defendant would receive a credit on the restitution.

The problem with the majority's conclusion is twofold. For all we know, because the settlement agreement contained no special provisions, the parties to the settlement agreement in this case could have intended for both orders to be satisfied. Thus, the majority not only interferes with the role of the legislative branch in this case by adding language to the statute, it may also have interfered with the rights of the parties to contract. In short, the stat-

ute does its intended job, and we should apply it as written.