# IN THE COURT OF APPEALS OF IOWA

No. 19-0208
Filed May 13, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**LLOYD L. OLIVER,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, John D. Telleen, Judge.

A defendant appeals from his conviction for willful injury causing bodily injury and assault with a dangerous weapon. **CONVICTIONS AFFIRMED, SENTENCE VACATED IN PART, AND REMANDED.**

Thomas M. McIntee, Waterloo, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson and Tyler J. Buller, Assistant Attorneys General, and Benjamin Kenkel, Law Student, for appellee.

Considered by Doyle, P.J., Ahlers, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**BLANE, Senior Judge.**

Lloyd Oliver appeals his convictions following a jury trial and guilty verdicts for willful injury resulting in bodily injury, as a habitual offender, and assault with a dangerous weapon. He contends the trial court erred in overruling his motion for judgment of acquittal, denying his motions for new trial and in arrest of judgment, and imposing court costs without adequately considering his reasonable ability to pay. Upon our review, we affirm the convictions but remand for resentencing as to Oliver's reasonable ability to pay court costs.

## I. FACTS AND PRIOR PROCEEDINGS

James James and Michael Gonzales were co-workers staying at the Motel 6 while working on a job in Davenport. In the early morning hours of November 2, 2017, they were getting ready to sleep when they heard a disturbance outside their room. James and Gonzales walked out of their room and saw Oliver standing over a woman, holding her down, and yelling in her face. James and Gonzales went to pull Oliver off of the woman and attempt to stop the attack.

Oliver pulled a knife from his pocket while two unidentified individuals came out of the Motel 6 behind James and Gonzales. Oliver then lunged at Gonzales, swinging the knife in his right hand. James attempted to grab Oliver's hand to prevent him from stabbing Gonzales. During the ensuing fracas, Oliver inflicted knife wounds to James's left hand, the top of his head, and his upper lip. James realized he had a deep cut on his hand after he pushed Oliver away. Oliver left the Motel 6 with the unidentified individuals after James escaped from the attack.

James was transported to a hospital, where he was treated. The cut to James's hand required fifteen stitches, the cut to his scalp required eighteen

staples, and the cut to his lip needed ten stitches. James missed four to five months of work because of his injuries. At the time of trial, James still had not regained full use of his hand. The jury was shown photos of James's wounds taken at the hospital. The events that night were captured on several of the Motel 6 security cameras, and the video was also shown to the jury as part of the State's evidence.

A trial information was filed charging Oliver with count 1, willful injury resulting in bodily injury, in violation of Iowa Code section 708.4(2) (2017), a class "D" felony, and as an habitual offender, in violation of Iowa Code section 902.8 and 902.9; and count 2, assault with a dangerous weapon, in violation of Iowa Code section 708.2(3). A jury trial commenced on November 4, 2018, and the jury found Oliver guilty of counts 1 and 2. Oliver then stipulated on the record to two prior felony convictions, establishing his habitual offender status.

After trial, Oliver filed motions for judgment of acquittal, for new trial, and in arrest of judgment, which the district court denied. On February 1, 2019, the district court sentenced Oliver on count 1 to an indeterminate sentence of fifteen years, with a mandatory minimum of three years, to run concurrent with a prior federal sentence, plus fines, court costs, attorney fees, correctional fees, and restitution. On count 2, the court sentenced Oliver to an indeterminate two years, to run concurrent with count 1, plus fines, court costs, and restitution. Oliver appeals.

II. Motions for Judgment of Acquittal**.**

Oliver challenges the trial court's denial of his motion for judgment of acquittal, which challenged the sufficiency of the evidence, particularly as to the specific intent element required for count 1.

"In evaluating sufficiency-of-evidence claims, we will uphold a verdict if substantial evidence supports it." *State v. Trane*, 934 N.W.2d 447, 455 (Iowa 2019). "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.* (quoting *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017)). "In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (quoting *State v. Keopasaeuth*, 645 N.W.2d 637, 640 (Iowa 2002)). "We will consider all the evidence presented, not just the inculpatory evidence." *Id.* "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence." *Id.* (alteration in original) (quoting *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006)).

In determining the sufficiency of the evidence to support a jury's finding, we start by looking at the jury instructions. *See Nitcher*, 720 N.W.2d at 556. The court instructed the jury to find Oliver guilty of willful injury causing bodily injury if the State proved beyond a reasonable doubt that Oliver had the specific intent to cause a serious injury and, in fact, caused a bodily injury. The instructions define a "serious injury" as "bodily injury which (1) creates a substantial risk of death; (2) causes serious permanent disfigurement; or (3) causes extended loss or impairment of the function of any bodily part or organ." The instructions define "bodily injury" as "physical pain, illness, or any impairment of physical condition."

Oliver claims the evidence fails to establish he had the specific intent to cause James serious injury. Because specific intent is seldom capable of direct proof, it "may be shown by circumstantial evidence and the reasonable inferences drawn from that evidence." *State v. Walker*, 574 N.W.2d 280, 289 (Iowa 1998). The evidence, when viewed favorably to the State, shows Oliver produced a knife with a blade three inches in length. Oliver swung the knife at Gonzales, and James interceded to protect Gonzales and received deep lacerations to his left hand, scalp, and upper lip. The extent of the victim's injury may be taken into consideration in determining a defendant's intent. *State v. Bell*, 223 N.W.2d 181, 184 (Iowa 1974). The nature and locations of James's multiple wounds on the head and face could convince the jury—raise a fair inference—of Oliver's specific intent to cause James serious injury.

Oliver testified at trial that James was pushing him and initiating their physical contact, while Gonzalez was jumped from behind by the two onlookers, including one wearing a red hoodie. These other two men then moved toward James. Oliver denied stabbing James and claimed James was injured by Gonzales's attackers. Oliver maintained his "work tool," which he admitted pulling out of his pocket, was not capable of inflicting James's injuries. Oliver testified the man in the red hoodie and his colleague had knives that likely caused James's wounds.

Other evidence, particularly the surveillance video, does not support Oliver's testimony. The video does not show anyone else with a knife or appearing to strike at James with a knife. James testified that it was Oliver, not others, who cut him with the knife.

Oliver's arguments are more suitable for trying to persuade the jury than challenging the sufficiency of the evidence.[1]  Sorting out claimed inconsistencies, determining credibility of witnesses, and deciding what weight to give conflicting evidence is the function of the jury, not the appellate court.  *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) ("The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive.  In fact, the very function of the jury is to sort out the evidence and 'place credibility where it belongs.'" (citations omitted)).

When the evidence is viewed in the light most favorable to the State, it could convince a rational jury that Oliver had the specific intent to inflict a serious injury on James and was guilty beyond a reasonable doubt.  Therefore, the district court properly denied his motion for judgment of acquittal based on challenges to the sufficiency of the evidence.

III. Motion for new trial and motion in arrest of judgment.

Oliver argues that the trial court erred in denying his post-trial motions for new trial and in arrest of judgment.  He raises three arguments: (1) that he was denied a fair trial because the State failed to produce all pages of the police reports that were to be attached to the trial information; (2) that the State failed to produce an unedited copy of the Motel 6 surveillance video of the incident; and (3) that the verdict was contrary to the greater weight of the evidence.  The State contends that Oliver only preserved error as to the first two issues and did not preserve error

---

[1] Oliver also argues that he did not assault James with a "dangerous weapon," evidence that would negate his specific intent.  This argument has no merit.  The jury convicted Oliver of Count 2, assault with a dangerous weapon.  The jury determined Oliver did use a dangerous weapon in assaulting James.

as to third—the weight-of-the-evidence argument. Based upon our review, we must agree.

Oliver's post-trial motions for new trial and in arrest of judgment specifically stated:

> 2. The Court should not have found the Defendant [guilty] of the above-referenced crime(s) as this is a mis-application of law for the following reasons:
> a. As asserted in the pre-trial arguments and objections, the Defendant has never received the full documentation from the State. Specifically the Minutes of Testimony are missing police report pages. A review will show that pages 7, 8, 13, 17, & 20 are not part of the Minutes of Testimony.
> b. The Defendant continues to assert the video recordings are not the same as what he observed during his federal court proceedings.

As evident, the motions made no mention of a weight-of-the-evidence claim. Our review of the post-trial hearing transcript also discloses no argument before the district court as to the weight of the evidence, and the court's ruling did not address such an argument. Because it was neither raised nor ruled upon by the district court, the weight-of-the-evidence issue is not properly preserved and cannot be considered by us in this appeal. *See State v. Webster*, 865 N.W.2d 223, 232 (Iowa 2015) (citing *Meier v. Senecaut,* 641 N.W.2d 532, 539 (Iowa 2002)).[2]

As to the motions for new trial and in arrest of judgment, we generally are to review the district court's ruling for abuse of discretion. "The district court has broad discretion in ruling on a motion for new trial," and thus our review in such

---

[2] In his appeal brief, Oliver's appellate counsel argues that if Oliver's trial counsel failed to preserve the police report and video recording issues, then we should consider them as ineffective-assistance-of-counsel claims. However, the brief does not contain an argument for us to address the weight-of-the-evidence issue based upon ineffective assistance of counsel.

cases is for abuse of discretion. *Nitcher*, 720 N.W.2d at 559 (quoting *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003)). However, "[w]e review a trial court's ruling on an asserted *Brady* violation de novo because it is constitutional in nature." *State v. Jones*, 817 N.W.2d 11, 15 (Iowa 2012) (citing *Harrington v. State*, 659 N.W.2d 509, 519 (Iowa 2003)). Oliver asserts that the State's failure to provide discovery material, both the pages of police reports and unedited Motel 6 video, constitutes a due process violation denying him a fair trial. "A defendant's due process rights are violated when the prosecution fails to produce upon request evidence favorable to the accused 'where the evidence is material . . . to guilt.'" *State v. Romeo*, 542 N.W.2d 543, 551 (Iowa 1996) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). To establish a *Brady* violation, Oliver has the burden of showing: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the suppressed evidence was material to the issue of the defendant's guilt. *See id.*

    a. Pages of the police reports.

Oliver's motion asserted that five specific pages of the police reports were not attached to the minutes of testimony as indicated. The State does not refute that the pages were not originally produced but were later provided to Oliver's trial counsel. Attached to its resistance to Oliver's motion were the specific pages Oliver referenced. At the post-trial hearing on the motions, Oliver's trial counsel acknowledged receiving the pages before trial and providing them to Oliver. The district court reviewed those pages, as have we, and determined they were forms that were primarily blank and the information they contained was included on the other pages of police reports that were attached to the trial information. For these

reasons, the court found there was no basis to grant a new trial. Based upon our review, we agree with the trial court, and we find that the State's initial failure to produce the particular pages did not prejudice Oliver's defense, Oliver was eventually provided the pages, and the pages did not contain any material information not already available to Oliver. Therefore, he was not denied a fair trial and the trial court properly denied his motions for new trial and in arrest of judgment.

b. Video recordings.

Oliver asserted a *Brady* violation in his post-trial motions, claiming that the State failed to produce in discovery unaltered or unedited surveillance video from the Motel 6. This matter was thoroughly hashed out on the record during a hearing that immediately preceded the trial. During the police investigation, the owner of the Motel 6 provided computer discs containing the motel surveillance video from four different cameras that captured the assault.

At the time of the assault, Oliver was on federal parole release in Illinois. Federal prosecutors initiated a parole revocation based on the assault at the Motel 6. Scott County prosecutors provided copies of the Motel 6 surveillance video discs to the federal authorities. For purposes of the federal parole revocation hearing, the federal prosecutor created a single video compilation from the four separate videos, which the prosecutor also made available to Oliver's federal defense attorney. Oliver observed this compilation video at his federal hearing.

Oliver's state defense attorney was provided access to the four discs that contained all of the surveillance video from the Motel 6 showing the assault from that evening. Oliver's trial counsel affirmed he had watched the "provided" version

and the "original" version of the Motel 6 camera footage and he "did not observe any difference." The surveillance videos were offered and received into evidence without objection during the state court trial. Both the prosecutor and Oliver's defense counsel used these video exhibits extensively in conducting their examinations of witnesses, including Oliver.

On our de novo review, we do not find a *Brady* violation. Oliver and his defense counsel were provided all of the surveillance video. That the prosecution did not produce the specific exhibit from the federal court proceedings, created by the federal prosecutor from the same surveillance video that had been made available to Oliver and his state defense attorney, did not deprive Oliver of a fair trial. Oliver's assertion that the surveillance video evidence used in the state trial was altered or different from what he had seen during his federal hearing is not substantiated. The district court correctly denied Oliver's motions on this issue.

IV. Reasonable ability to pay determination.

Oliver contends that the court failed to determine his reasonable ability to reimburse the State for his court-appointed attorney fees, court costs and correctional fees before imposing those financial obligations. We review restitution orders for correction of errors at law. *State v. Klawonn*, 688 N.W.2d 271, 274 (Iowa 2004). "[W]e determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law." *Id.* (quoting *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001)); *see also State v. Albright*, 925 N.W.2d 144, 158 (Iowa 2019).

The State argues the appropriate venue for this challenge is a section 910.7 petition. *See* Iowa Code § 910.7 ("At any time during the period of probation,

parole, or incarceration, the offender or the office or individual who prepared the offender's restitution plan may petition the court on any matter related to the plan of restitution or restitution plan of payment and the court shall grant a hearing if on the face of the petition it appears that a hearing is warranted."). But our supreme court has clarified that "once the deadline for direct appeal has run, the defendant is limited to filing a petition . . . under Iowa Code section 910.7." *State v. Gross*, 935 N.W.2d 695, 699 (Iowa 2019). Thus, Oliver may raise this issue on direct appeal.

At the time of sentencing, Oliver's counsel argued that because Oliver had been in custody for over a year since the incident, he did not have the means to pay the court-appointed attorney fees and also asked that the court to waive the fines. During his allocution, Oliver acknowledged, "I pay all the restitution and stuff, I have no problem stepping up to the plate for a situation that happened because of me." At another point in the sentencing, after consulting with Oliver, his attorney advised the court: "He is not disputing the restitution claim which was paid by the victim restitution authority."

During the sentencing, the court noted: "And you had been doing fairly well, you were employed and making good money." This was apparently based upon information in the presentence investigation report that Oliver had worked as a concrete finisher. After inquiring about the amount of court-appointed attorney fees that had been incurred, the court stated:

> The Court orders restitution of court appointed attorney's fees not to exceed $4000. The Court orders the defendant to make victim restitution of $8930.30. The Court notes that the defendant was making $60,000 a year prior to this incident and I conclude based on that that he has the reasonable ability to repay court appointed

> attorney's fees and the Court does order him to make restitution of the court appointed attorney's fees as well.[3]

The court also imposed the obligation that Oliver be responsible for all court costs related to counts 1 and 2. In its order of disposition, the court summarized, "The Court further orders the defendant to pay the court costs, correctional fees, court appointed attorney's fees not to exceed $4000 and surcharges. The Court finds the defendant does have the reasonable ability to pay court appointed attorney's fees." Thus, the court made no mention of Oliver's ability to pay a set amount of court costs or correctional fees. The exact amounts of those awards do not appear to have been before the court at the time.

A defendant's reasonable ability to pay is a constitutional prerequisite for a criminal restitution order. *State v. Haines*, 360 N.W.2d 791, 797 (Iowa 1985).

> A court should make every effort to determine an offender's financial condition as early as possible. This may require the offender filing an updated financial statement, a colloquy with the offender, or both. A court cannot impose restitution on an offender for the items subject to the offender's reasonable ability to pay if the offender does not have a reasonable ability to pay those items.

*Albright*, 925 N.W.2d at 160; *see also Gross*, 935 N.W.2d at 702. Here, the court did not make any independent inquiry at the sentencing as to Oliver's current income, assets, or reasonable ability to pay, nor did it request Oliver to complete a current financial affidavit.

We note that the sentencing in this case took place on February 1, 2019, which pre-dated the *Albright* opinion and its progeny regarding the court

---

[3] On March 18, 2019, the court entered a separate restitution order in this case requiring Oliver to pay $8955.39 to the Iowa Crime Victim Compensation Program. The trial court finding that Oliver was making $60,000 per year prior to his incarceration is based on the presentence investigation report.

determining a defendant's reasonable ability to pay. In *Albright*, our supreme court clarified two statutory categories of restitution. 925 N.W.2d at 159. The first category includes restitution "to the victims of the offender's criminal activities [and] to the clerk of court for fines, penalties, [and] surcharges." *Id.* (alteration in original). The court is required to order restitution for the items in this first category regardless of the offender's reasonable ability to pay. *Id.*

The items of restitution in the second category are for crime victim assistance reimbursement, restitution to public agencies pursuant to section 321J.2(13)(b), court costs—including correctional fees approved pursuant to section 356.7, court-appointed attorney fees ordered pursuant to section 815.9—including the expense of a public defender when applicable, contribution to a local anticrime organization, or restitution to the medical assistance program pursuant to chapter 249A. *Id.* The court can only order restitution for items in this second category to the extent the offender has the reasonable ability to pay. *Id.* The supreme court has also clarified that a plan of restitution is not complete until the sentencing court issues the final restitution order. *Id.* It emphasized that a final restitution order must take into account the offender's reasonable ability to pay certain items of restitution. *See also State v. Crawford*, No. 17-1640, 2019 WL 1868195, at *1 (Iowa Apr. 26, 2019) (citing *Albright*, 925 N.W.2d). "*Albright* makes clear that with respect to restitution, no award of reasonable-ability-to-pay items such as jail fees may occur until all such times are before the court." *Gross*, 935 N.W.2d at 702.

The sentencing court found Oliver had the reasonable ability to pay "court appointed attorney's fees not to exceed $4000." But, it also ordered Oliver to pay

court costs and correctional fees without having those amounts before it. Without those amounts, the court was unable to make a reasonable-ability-to-pay determination and award those costs. *See id.* Therefore, we must vacate that part of the sentence and remand for that determination and an appropriate order consistent with *Albright*.[4]

**CONVICTIONS AFFIRMED, SENTENCE VACATED IN PART, AND REMANDED.**

---

[4] We note that Oliver—consistent with his statements at sentencing—does not challenge his order to pay restitution to the Iowa Crime Victim Compensation Program.