# IN THE SUPREME COURT OF IOWA

No. 19–0089

Submitted December 15, 2020—Filed January 22, 2021

**STATE OF IOWA,**

>    Appellee,

vs.

**JOSEPH SCOTT WAIGAND,**

>    Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Union County, John D. Lloyd, Judge.

Defendant seeks further review of court of appeals decision affirming restitution award. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT RESTITUTION ORDER REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

Waterman, J., delivered the opinion of the court, in which all justices joined.

Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Katie Krickbaum, Assistant Attorney General, and Timothy Ray Kenyon, County Attorney, for appellee.

**WATERMAN, Justice.**

In this appeal, we must determine whether the district court erred in awarding criminal restitution in the full amount of the victim bank's deficiency judgment, beyond the specific amounts the defendant admitted converting in his guilty plea colloquy. The bank had financed the defendant's farming operation and collateralized its loans with mortgages and security agreements. The defendant sold crops and illegally diverted the proceeds he owed the bank. The defendant was charged with ongoing criminal conduct and multiple counts of theft with intent to defraud a secured party. The theft charges were dismissed in a plea agreement in which he pled guilty to ongoing criminal conduct for forty-eight specific transactions. He ultimately admitted the bank's losses for those sales totaled $288,000. The bank foreclosed on his farmland and equipment and obtained a civil deficiency judgment of $988,636.25. The district court, despite expressing skepticism, ordered the defendant to pay restitution in the full amount of the bank's loss, rather than the amount he admitted converting.

The defendant appealed the restitution award, arguing the amount was excessive, the court erred in failing to allow an offset for the civil judgment, and that his counsel was ineffective for failing to demand a jury trial on restitution and for failing to assert equitable estoppel against the State. We transferred the case to the court of appeals, which affirmed the full amount. We granted the defendant's application for further review.

On our review, we determine that the State failed to prove the full amount was caused by the crime of conviction: ongoing criminal conduct. We vacate the amount in excess of $288,000 and remand the case for entry of an amended restitution award in that amount. All parties and the victim agree that amounts paid on the civil judgment will be credited to the

restitution judgment and vice versa to avoid a double recovery. Based on our determination, we need not reach the defendant's claim raised for the first time on appeal that his trial counsel was ineffective for failing to demand a jury trial on the amount of restitution or argue equitable estoppel.

## I. Background Facts and Proceedings.

Joseph Waigand ran a large farming operation in Union County, which he financed through the Iowa State Savings Bank. Between 2009 and 2015, the bank and Waigand executed loan agreements secured by mortgages on the real estate and security interests in Waigand's property, including his livestock, crops, equipment, and receivables.

When extending credit, the bank relied in part on Waigand's balance sheet dated March 23, 2015, which reported $4,287,000 in assets, $2,499,000 in liabilities, and a net worth of $1,788,000. At that time, the amount of debt was $1,045,000. On December 23, loan officers checked the grain bins and discovered that Waigand had misrepresented the amount of grain that he owned. That day, bank president Kevin Stewart notified Waigand by letter that the bank terminated the line of credit. On January 6, 2016, senior vice president William Kunert notified Waigand by letter that the bank would extend no new credit for 2016. The letter was based on a farm call to view collateral, the review of Waigand's financial information, and Waigand's inability to make payments.

During that spring, the bank's collection efforts were largely unsuccessful. On June 10, the bank filed a petition for foreclosure. On July 7, Waigand filed for bankruptcy. During the bankruptcy proceedings, the trustee determined that Waigand had misrepresented the value of assets, converted crops, and diverted funds to third parties. On August 25, at the first meeting of the creditors, Waigand disclosed that the

grain, grain checks, and valuations were substantially less than what he had listed in the March 2015 statement. The bank discovered that one asset Waigand had valued at $897,000 was actually worth zero. At the bankruptcy hearing on September 7, Waigand openly admitted to selling grain subject to the bank's security interests at the United Farmers Cooperative in Afton in a renter's name, Jake Hayes, to pay rent.

On January 20, 2017, the district court granted the bank's petition for foreclosure. The bank proceeded to liquidate assets. On October 3, the district court executed a levy on Waigand for a deficiency judgment of $988,636.25 in the civil action.

On December 8, the State filed a trial information charging Waigand with five counts of theft in the first degree, class "C" felonies in violation of Iowa Code sections 714.1(5), 714.2(1), and 902.9(1)(*d*); five counts of theft in the second degree, class "D" felonies in violation of Iowa Code sections 714.1(5), 714.2(2), and section 902.9(1)(*e*); and one count of ongoing criminal conduct, a class "B" felony in violation of Iowa Code sections 706A.1, 706A.2(1), and 706A.4. The Code provides, in part: "A person commits theft when the person does any of the following: . . . [t]akes, destroys, conceals or disposes of property in which someone else has a security interest, with intent to defraud the secured party." Iowa Code § 714.1(5) (2018).

The criminal investigation had begun in September 2016 after bank personnel discovered that secured crops had been liquidated and funds diverted to other individuals. At that time, the case was referred to the Iowa Department of Criminal Investigation (DCI). DCI Agent Marc Ridout obtained records from the bank and third parties that had done business with Waigand.

The criminal investigation corroborated the facts disclosed in the bankruptcy proceeding: Waigand had misrepresented the amount of grain that belonged to him and converted crop sale proceeds that belonged to the bank. Agent Ridout confirmed that on April 8, Waigand completed an "Authorization for Third Party Payment" to Hayes Cattle Co. (Jake Hayes) from United Farmers Cooperative in Afton for 7000 bushels of corn, which equated to $23,520. While Waigand claimed this was the only transaction he completed like that, Agent Ridout discovered forty-eight similar transactions. These transactions resulted in the sale of corn, hay, and beans, totaling approximately $268,788.91, the proceeds of which were paid to Waigand and third parties. The transactions involved several third parties, occurred without the bank's knowledge or permission, and resulted in no payments to the bank.

Waigand pled guilty to the offense of ongoing criminal conduct on June 15, 2018. The State dismissed the remaining counts. During the plea hearing, the prosecutor said restitution was "already requested in the approximate amount of $270,000" but that it "intend[ed] to request that amount or near that based upon the final arithmetic calculations."

President Stewart testified at the sentencing hearing on August 29. He testified that the deficiency balance on all loans still owed by Waigand was "right at a million dollars." The prosecutor argued, "The bank has lost nearly a million dollars. The accounts as shown in those exhibits add up to approximately $286,000 that we can document did not go through the bank which should have."

The court gave the State thirty days to provide the specific amount sought in restitution and told Waigand that he could request a hearing if he objected to the State's restitution figure. The court sentenced Waigand

to a term of imprisonment not to exceed twenty-five years, suspended, and placed Waigand on supervised probation for five years.

On September 19, the State filed an application for a supplemental restitution order. The court ordered restitution in the amount the State claimed: $988,636.25. Waigand filed an objection and request for hearing, primarily arguing that the district court in the civil proceeding had already ordered the defendant to repay the amounts that the court ordered in the criminal proceeding. In a supplement to his original objection, Waigand claimed the restitution award should be offset by $104,069 in expenses "legitimately directed at sustaining the farming operation." In these filings, Waigand's counsel stated the amount converted was $276,518.66.

On November 21, the court held a restitution hearing. At that hearing, Adam Snodgrass, the bank's CEO and CFO testified that after the assets were liquidated, "a judgment of approximately $988,000 remain[ed] unpaid" and was "considered pure loss." In terms of the civil action, Snodgrass said "a dollar applied to one would be a dollar applied to both[] . . . . We have no intention of double recovery." The court said it was "a little baffled" and stated, "To me, the criminal restitution amount should be the amount that was pledged to the bank, sold, and proceeds not paid over. Which may or may not be the same number as the bank's total loss on the loan." The prosecutor argued that Waigand was liable for the $988,636.25, and explained that, according to the bank, this was because, "as part of the ongoing process, all of the represented assets were liquidated and not provided to the bank, therefore, resulting in their loss." The court, however, said, "[T]his defendant isn't liable in restitution in a criminal case for a change in market value of the real estate, in my view." Further, the court said,

> As I understand the case law, the bank would be entitled to restitution in the criminal case for the results of the criminal conduct to the extent that they could have recovered for that conduct as a civil court, which in this case would arguably be conversion or something similar. To me that's different from the bank's overall loss when it liquidated all of the assets. Am I missing something or not --

In response, the prosecutor asked Mr. Snodgrass a few more questions, and Mr. Snodgrass explained the loan-to-value ratio and that "[g]iven the balance sheet that we had at the time the loans were granted, you would not expect any kind of loss approaching a million dollars to be realized." The court also asked defense counsel whether there was "a distinction between the restitution that the Court could order based on an ongoing criminal conduct offense as opposed to a theft offense that covered the same basic fact situation." Defense counsel responded that the civil comparison to the admitted acts constituted conversion and that the restitution award should be limited to the amount converted in the acts Waigand admitted to in his guilty plea colloquy.

The district court ordered that Waigand pay $988,636.25 in restitution. The court found that "[h]is dishonesty resulted in the collapse of his farming operation and the bank obtained judgments against the defendant and his wife for $988,636.25." The district court held that Waigand's conduct was the factual cause of the loss and within the scope of liability. More specifically, it found that Waigand,

> knowing already that he was in trouble, nevertheless engaged on a course of action that could have no other effect than to cause more trouble. Here, that trouble was the collapse of the defendant's farming operation, forcing the bank to liquidate its collateral.

Waigand appealed, arguing the district court erred in calculating the amount of restitution because (1) the State failed to prove the acts to which Waigand pled guilty caused the bank's total loss; and (2) the court should

have ordered an offset for amounts Waigand had already been ordered to pay on the civil judgment. Waigand also argued for the first time that he had a right to a jury trial on restitution and that his counsel had been ineffective when he failed to argue equitable estoppel based on the prosecutor's earlier representation that only the lower amount of restitution would be sought.

We transferred the case to the court of appeals. The court of appeals affirmed the district court judgment, determining that the district court "did not err in setting the amount of victim restitution and Waigand's counsel was not ineffective for failing to assert a right to a jury trial or equitable estoppel." Waigand applied for further review, arguing restitution should be limited to "no more than $288,000" with an express offset provision added to the amended restitution order. We granted Waigand's application for further review.

## II. Standard of Review.

"We review restitution orders for correction of errors at law." *State v. Jenkins*, 788 N.W.2d 640, 642 (Iowa 2010). "When reviewing a restitution order, 'we determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law.'" *State v. Klawonn*, 688 N.W.2d 271, 274 (Iowa 2004) (quoting *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001)). The district court has "broad discretion in determining the amount of restitution when the record contains proof of a reasonable basis from which the amount may be inferred." *State v. Shears*, 920 N.W.2d 527, 530 (Iowa 2018).

We review ineffective-assistance-of-counsel claims de novo. *State v. Myers*, 653 N.W.2d 574, 576 (Iowa 2002).

**III. Analysis.**

We first address whether substantial evidence supports the $988,636.25 restitution award. We conclude the State failed to prove that amount was caused by the crime of conviction. We vacate the restitution award to the extent it exceeds the total converted in the transactions admitted in his guilty plea, $288,000.[1] We reiterate that offsets for payments on the civil judgment occur by operation of law and need not be expressly provided in the restitution order. Because Waigand does not dispute that restitution in the amount of $288,000 is appropriate, and we are reducing the restitution to that amount, we need not reach his alternative arguments that he had a right to a jury trial on restitution or that equitable estoppel applies.

**A. The District Court's Order Was Not Supported by Substantial Evidence.** We must decide whether the district court erred in ordering that Waigand pay $988,636.25 in restitution. Iowa Code chapter 910 governs criminal restitution. "In all criminal cases in which there is a plea of guilty, . . . the sentencing court shall order that restitution be made by each offender to the victims of the offender's criminal activities . . . ." Iowa Code § 910.2(1). Restitution both "serves to protect the public by compensating victims for criminal activities, [and] also serves to rehabilitate the defendant." *State v. Izzolena,* 609 N.W.2d 541, 548 (Iowa 2000) (en banc). It "forces the offender to answer directly for the consequences of his or her actions." *Bonstetter,* 637 N.W.2d at 165. Restitution orders may include pecuniary damages, limited to "those

---

[1]The record reflects several different numbers for the total amount Waigand admittedly diverted from the bank in the transactions to which he pleaded guilty. We are using the final number acknowledged by his appellate counsel in the application for further review—"no more than $288,000."

recoverable in a civil action and unreimbursed by insurance." *State v. Roache*, 920 N.W.2d 93, 100 (Iowa 2018).

The burden is on the State to prove the amount of restitution by a preponderance of the evidence. *Bonstetter*, 637 N.W.2d at 168. The defendant's criminal conduct must have been the cause in fact of the loss and within the scope of liability. *Shears*, 920 N.W.2d at 541 (applying *Thompson v. Kaczinski*, 774 N.W.2d 829, 837 (Iowa 2009)).

Waigand pled guilty to ongoing criminal conduct related to the forty-eight transactions involving the conversion of crop sale proceeds and ultimately admitted he diverted a total of $288,000. Waigand admits there was a causal connection between these transactions and that loss. The fighting issue is whether Waigand's ongoing criminal conduct caused the balance of the restitution ordered, $988,636.25 minus $288,000 or $700,636.25. As his appellate counsel argues, "Waigand never pleaded to or admitted any alleged deception in obtaining the financing, and therefore [those] allegations cannot be used to justify restitution in the amount sought by the State and the bank." We agree.

The district court described the State's restitution claim as "baffl[ing]." The court indicated that it seemed the amount should have been the proceeds from selling assets pledged to the bank that Waigand failed to pay. The court also stated that it did not believe Waigand would be liable for a change in market value of real estate and that while Waigand could be liable for the consequences of an analogous civil action, such as conversion, this seemed "different from the bank's overall loss when it liquidated all of the assets." Defense counsel argued that the civil counterpart to the admitted acts was conversion and that the restitution should be limited to the acts admitted in the guilty plea colloquy—the forty-eight transactions resulting in a total loss to the bank of $288,000.

The district court nevertheless determined that Waigand's conduct "forc[ed] the bank to liquidate its collateral," justifying the finding that the damage was the amount of the civil deficiency judgment: $988,636.25. We fail to see evidence that Waigand's crime of conviction, ongoing criminal conduct, caused the full amount of that loss. The State dismissed the fraud-based theft charges. Therefore, those charges cannot support the State's theory that the bank would not have extended the loans and lost nearly a million dollars because of Waigand's fraudulent overstatement of his assets. Waigand is only liable for damages caused by the forty-eight transactions admitted in his plea of guilty to ongoing criminal conduct. *See State v. Holmberg*, 449 N.W.2d 376, 378 (Iowa 1989) (reducing restitution because of insufficient proof that defendant caused the loss beyond the amount he admitted in his guilty plea); *see also Emps. Mut. Cas. Co. v. Van Haaften*, 815 N.W.2d 17, 28 (Iowa 2012) (limiting "preclusive effect" of plea "to the essential elements of the offense").

The district court has broad discretion in determining the amount of restitution, but substantial evidence supports only an award of $288,000. "Sentencing courts should not rubber-stamp victim restitution claims." *Roache*, 920 N.W.2d at 108. The district court erred in awarding the larger amount.

**B. An Offset Provision Is Not Required in the Restitution Order Because Offsets Are Provided by Operation of Law.** Waigand argues the district court erred by failing to include a provision in the restitution order that any payment on the civil judgment would be credited against the restitution judgment and vice versa. We hold that restitution orders need not include an offset provision because such offsets shall occur by operation of law. Iowa Code section 910.8 provides that "any restitution payment by the offender to a victim shall be set off against any judgment

in favor of the victim in a civil action arising out of the same facts or event." This requirement is meant to avoid a "windfall" to the victim. *Roache*, 920 N.W.2d at 100. In *State v. Driscoll*, we noted the purpose of section 910.8 was to "coordinate civil recoveries with criminal restitution to avoid double recovery" and that this purpose did "not turn on the timing of the civil-settlement and criminal-restitution orders." 839 N.W.2d 188, 191 (Iowa 2013) (discussing *Klawonn*, 688 N.W.2d at 275).

The criminal restitution order and civil action arose out of the same transactions. As the victim bank and the State recognize, any payment on the civil judgment will reduce the criminal restitution award and vice versa. This shall occur regardless of whether the restitution order expressly provides for an offset.

## IV. Disposition.

For these reasons, we vacate the decision of the court of appeals and reverse the district court's restitution award. We remand the case for entry of a revised restitution award in the amount of $288,000.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT RESTITUTION ORDER REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**